### HOEFLE v. COMMISSIONER OF INTERNAL REVENUE.

No. 8232.

Circuit Court of Appeals, Sixth Circuit.

Sept. 16, 1940.

714

Clement V. Jacobs, of Dayton, Ohio, for petitioner.

Harry Marselli, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Harry Marselli, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before ALLEN, HAMILTON, and ARANT, Circuit Judges.

ARANT, Circuit Judge.

The Commissioner of Internal Revenue asserted a deficiency in petitioner's income tax for the year 1931, and also assessed penalties for late filing and for failure, with intent to defraud the United States, fully to report income. The Board of Tax Appeals sustained the Commissioner in his holding that certain unidentified deposits constituted income, his denial of certain deductions claimed for bad debts, and his assessments of penalties.

For some time prior to 1931, petitioner was in the employ of W. C. Rands, Inc., a company engaged in the investment brokerage business in Detroit, Michigan. He first served as secretary to the president and later handled purchases and sales of securities. His salary was $400 a month. He began in 1926 buying and selling securities in a small way for himself, and his market activities gradually expanded. In 1931 he sold 48,500 shares of stock in one hundred and twenty-four separate transactions, using four accounts, each under a code number, with three brokerage houses. The stock, which had cost him $4,045,562.50, brought $4,216,311.50. After deduction of short dividends and premiums in the amount of $18,093.66 and a loss of $725.74, a net profit of $151,929.60 remained. There were other items of income, including salary, interest on savings, and fees from an estate.

Petitioner did not file his return until November 5, 1933, a year and seven months after it was due, and after he had seen a newspaper report, which he confirmed by inquiry of his brokers, that the Bureau of Internal Revenue was investigating brokers' accounts.

The only question here is whether the Board's findings of fact are supported by substantial evidence. If they are, we can not reverse, even if, on the basis of the record, we think we would find differently. Palmer v. Commissioner, 302 U.S. 63, 58 S. Ct. 67, 82 L.Ed. 50; Helvering v. F. R. Lazarus & Co., 308 U.S. 252, 60 S.Ct. 209, 84 L.Ed. 226; Marshall v. Commissioner, 6 Cir., 57 F.2d 633, certiorari denied, 287 U. S. 621, 53 S.Ct. 20, 77 L.Ed. 539.

Properly taking the position that the Commissioner's determination that certain unidentified deposits constituted income was prima facie correct and the burden upon the taxpayer to overcome this presumption, the Board said:

"Here we have the unsupported, naked statement by petitioner that he had no other income. On the record this is not enough. We are unable to accept the taxpayer's uncorroborated, self-serving statement as overcoming the Commissioner's finding. For obvious reasons we cannot give full credence to such declarations.

"To meet his burden of proof and overthrow respondent's determination, petitioner should have introduced evidence identifying and explaining the nature of the bank deposits in question. The unconvincing statement that he had received moneys to invest for members of his family is not sufficient. The consequence is that the respondent's determination must be upheld."

There was no reversible error in this finding of the Board.

■ The Board also upheld the Commissioner's denial of deductions for bad debts, neither of which had been claimed in petitioner's return. As to the first alleged loan, petitioner testified as follows: "The loan to Mr. Violette was covered by checks dated March 4 and February 4, 1930. This man came into the office of Rands, Inc. He had some oil interests in Michigan and said he was short of money at the time and asked me to lend him some; that if I did he would come back and give me some units or something in the company he was going to form; that it would probably be fall before he did it. He left with me at the time a stock certificate of a company that he had formed in Nevada. Unfortunately, I lost it. I don't know where it is, but the man never came back and I am out the money. The total amount I gave him was $400. As to when I decided I was out the money,—after I wrote a letter to his company in Nevada and the thing came back 'unknown' I decided at that time that he had gone. I wrote the letter sometime in the winter or probably early spring of 1931. I don't recall when it was exactly but it was about that time. When that letter came back unanswered I just took the thing and threw it away. In fact I don't why I kept the checks except I was keeping checks at that time. I threw away the correspondence." As to the other, petitioner testified that he made a loan in the form of a check jointly payable to Smudee, Schulz and Piatt; that Smudee and Schulz, with whom he dealt, died, leaving no estates; that he in fact never knew Piatt or his whereabouts; and that Piatt, "living or dead," was not contractually liable to him. The Board found that the $400 advance to Violette was in the nature of an investment rather than a loan and held that, in any event, the evidence did not establish that it became worthless in 1931, or that a loss was sustained in that year. It also concluded that the $100 was not deductible inasmuch as there was no evidence that Piatt had not authorized or ratified the negotiation of the loan or that he was financially irresponsible.

We think the evidence warranted the Board's denial of these deductions.

■■ The burden was upon petitioner to prove that his delinquency in filing his return was not wilful but due to reasonable cause. Sabatini v. Commissioner, 2 Cir., 98 F.2d 753; Revenue Act of 1926, § 1103, 26 U.S.C.A.Int.Rev.Acts, page 316. The Board held that he had not sustained this burden. Petitioner had attached an affidavit to his return, in which he said his tardy filing was due to "illness, business reverses and inability to meet the payment of the tax when due." He added: "It was always my intention to comply with the law and as soon as I was in a position to raise the money necessary to pay the tax, I voluntarily filed the return and offer in compromise." He testified that he failed to file his return because he "just wasn't physically able to do it," but admitted that he was on the job about every day during the year 1932, working for Rands, Inc. We think the evidence justified the Board's finding that petitioner's belated filing was wilful and without reasonable cause.

■ The Board found, as had the Commissioner, that petitioner had filed a false and fraudulent return with intent to evade tax and that the deficiency, or some part thereof, was due to intent to evade tax. Although his brokers had complete records which showed a net profit on his tradings alone in excess of $150,000, petitioner returned a gross income of only $92,886.61. The Board said: "To attribute such a disparity to oversight or error overtaxes credulity. It evidences a clear intention to misrepresent the facts and to mislead the Government." Other circumstances in the record, which we think it unnecessary to discuss, also indicate fraud. There was ample evidence to support the Board's finding.

■ Petitioner was acquitted in the District Court for the Eastern District of Michigan, Southern Division, upon a charge of "wilfully, knowingly, unlawfully, and feloniously" attempting to evade and defeat taxes upon his 1931 income. He claims the doctrine of res judicata bars imposition of the fraud penalty. The decision in Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917, settled the law contrary to this contention.

The decision of the Board of Tax Appeals is affirmed.