Elena Gigante v. Commissioner.
Gigante v. Comm'r
Docket No. 3003-64.
United States Tax Court
T.C. Memo 1965-292; 1965 Tax Ct. Memo LEXIS 39; 24 T.C.M. (CCH) 1624; T.C.M. (RIA) 65292; November 4, 1965
Philip Shurman, for the petitioner. Kennard I. Mandell, for the respondent. MULRONEY Menorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined a deficiency in petitioner's 1960 income tax in the amount $3,498.63 and an addition to the tax under section 6653(a) of the Internal Revenue Code of 1954[1] (5 percent negligence penalty) in the sum of $174.93. By an amendment to answer, respondent claimed an increased deficiency for the year 1960 in the amount of $2,553.60, *40 and an increased addition to the tax under section 6653(a) in the amount of $127.68. The issues are whether the deposits in certain bank accounts constitute unreported income of petitioner and whether petitioner is entitled to a dependency exemption of $600 for her spouse for the year 1960 and whether she is liable for an addition to the tax for that year under section 6653(a). Findings of Fact Some of the facts have been stipulated and they are found accordingly. Petitioner, whose maiden name was Elena Amodeo, is about 48 years old and she resides in New York City. She married Pasquale Gigante, also known as Pasquale Giganti, and Patty Gigante, on March 11, 1960 in a municipal court ceremony in New York. Petitioner has for some 10 years been employed by Local 875 - International Teamsters Union as a secretary. Her brother, James Amodeo, was president of Local 875 - International Teamsters Union. Petitioner filed her individual income tax return on Form 1040 for the taxable year 1960 in the name of Elena Amodeo. Petitioner reported $5,300 income in the form of wages *41 in 1960 with $800approximately withheld, and a tax due in the sum of $729.70. The tax due as shown on her return was computed with reference to the tax rate schedule applicable to unmarried taxpayers who qualify as Head of Household. Also on said return petitioner claimed an exemption for herself of $600, and using the line for listing child dependents, listed "Pasquale" and on this line took an additional dependency exemption of $600. She had no child. She did not itemize her deductions but instead claimed a purported standard deduction of $530. In 1960 there was a savings account No. XX6071 in the East River Savings Bank of New York, New York, standing in the name of Elena Amodeo. Petitioner opened this account with the first deposit being made on December 3, 1957. Thereafter she made all deposits and all withdrawals with respect to this account. During the taxable year 1960 petitioner made deposits totaling $3,439,20 to account No. XX6071 in the East River Savings Bank, as follows: Date
Deposit
Feb. 5, 1960
$ 500.00
Feb. 9, 1960
2,139.20
Feb. 18, 1960
500.00
Apr. 26, 1960
100.00
May 3, 1960
200.00
Total
$3,439.20
During the year 1960 interest in *42 the amount of $102,68 was credited to the above savings account. In 1960 there was a savings account No. X5068 in The Bowery Savings Bank in New York standing in the name of Elena Amodeo. Petitioner opened this account on June 30, 1952 and she maintained it as her individual account through the year 1960. On August 4, 1961 petitioner had this account No. X5068 in The Bowery Savings Bank changed to read as follows: "Elena Amodeo in trust for Patty Giganti". During the taxable year 1960 petitioner made deposits totaling $2,400 to account No. X5068 in The Bowery Savings Bank, as follows: Date
Deposit
Feb. 29, 1960
$ 900
Apr. 19, 1960
100
May 6, 1960
100
May 9, 1960
400
May 31, 1960
300
June 24, 1960
300
Oct. 3, 1960
300
Total
$2,400
During the year 1960 interest in the amount of $86.12 was credited to account No. X5068 in The Bowery Savings Bank. In 1960 there was a savings account also in The Bowery Savings Bank of New York numbered 27095 standing in the name of petitioner as Elena Amodeo and her mother Vincenza De Angelis. The signature card with respect to this account, which bears the signature of petitioner and her mother, authorizes unrestricted *43 transactions in the account upon the signature of either. It bears the statement that the signers hold the account: "As Joint Tenants, Either to Draw, Survivor to Take All." During the taxable year 1960 deposits totaling $3,500 were made to account No. X7095 in The Bowery Savings Bank, as follows: Date
Deposit
May 16, 1960
$1,100
Aug. 17, 1960
1,000
Sept. 22, 1960
1,400
Total
$3,500
During the year 1960 interest of $198.35 was credited to account No. X7095 in The Bowery Savings Bank. Vincenza De Angelis was 75 years of age in 1960. She does not speak English fluently and she does not comprehend commercial transactions. Except for a pension of $120 per month, she had no income in 1960. During the year 1960 petitioner maintained a savings account No. XX7461 in The First National City Bank of New York, New York. The first signature card with respect to this account which is dated April 3, 1959, states this is a voluntary trust account of "Mrs. Elena Amodeo" in trust for Patty Giganti. This card describes the beneficiary, Patty Giganti, as a friend. A later signature card, dated September 19, 1962, states Elena Amodeo as trustee and calls Patty Giganti her *44 husband. Petitioner failed to report interest of $34.58 credited to the above savings account in 1960. During the year 1960 petitioner maintained a checking account No. XXXX-X23 5 in The First National City Bank of New York and made deposits that year totaling $5,137.05 in this account. Respondent determined the return filed by Elena was deemed to be that of a married person filing separately. He also disallowed the amount claimed as the standard deduction which exceeded the legal limit of $500 imposed by section 141(b). Petitioner alleged no error in these adjustments so they will be deemed admitted. Respondent also determined petitioner omitted interest in 1960 on the East River Savings Bank account in the amount of $102.68, The Bowery Savings Bank account No. X5068 in the amount of $86.12 and The Bowery Savings Bank account No. X7095 in the amount of $198.35, or a total of $387.15. She conceded she was properly chargeable for unreported interest in the sum of $86.12 on account No. X5068. Respondent also disallowed the $600 additional exemption which petitioner took on her return for Pasquale. Respondent also determined the unexplained bank deposits in the year 1960 in the savings *45 accounts in the East River Savings Bank and the two accounts in The Bowery Savings Bank, in the total sum of $9,339.20, constituted additional income to petitioner and by reason of above adjustments, respondent determined a deficiency in petitioner's 1960 income tax in the total sum of $3,498.63. Petitioner in her petition charged error in respondent's determining unexplained deposits constituted income and alleged: "All deposits can be explained as savings from prior periods, wedding gifts and exchanges." By way of amendment to answer filed at the close of trial to conform to proof, respondent alleged the interest realized on the savings account in The First National City Bank of New York (No. XX7461) in the amount of $34.58 constituted income to petitioner which she had failed to report. In this amendment respondent also alleged the 1960 deposits in the special checking account No. XXXX-X23 5 in The First National City Bank of New York, in the total amount of $5,137.05, constituted additional income to petitioner. By reason of the allegations in the amendment to answer respondent claimed an increased deficiency in the amount of $2,553.60. By way of reply to the answer petitioner *46 admitted she was liable for the $34.58 interest realized on the savings account (No. XX7461) in The First National City Bank of New York but denied the other allegations of the amendment with respect to the 1960 deposits in the checking account (No. XXXX-X23 5) in that bank being income to her. She also filed an amendment to her petition alleging she did not negligently or otherwise omit income from her 1960 return. Opinion If we accept petitioner's story with respect to the dependency credit issue, that when she took the $600 dependency credit on her 1960 return for "Pasquale", she meant she was taking it for her dependent husband named Pasquale, she is left with the burden of actually proving she contributed over one-half of his total support and that he "has no gross income and is not the dependent of another taxpayer." Section 151(b). She wholly failed to prove her husband had no gross income in 1960. It is true she testified that in 1960 when she married him he was sick and had no income. She testified that she "had no idea whether he was employed or not" before she married him on March 11. She said that after she married him he was continuously sick and unemployed though *47 not incapacitated and that he had no income and filed no income tax return for 1960, 1961 and 1962 (during which years she took him as an exemption in the same manner). According to her, his illness did not confine him to their home and, by the time of trial in 1965, he had recovered sufficiently to work. Petitioner and her husband were not estranged and yet he was not called to testify. If ever there was a case where the conclusion should be made that if he were called, his testimony would not corroborate petitioner, this is it. [2] This is especially true because petitioner's entire case on all of the issues seems to be built on her own oral testimony, which is largely so rich in contradictions and discrepancies and often so obviously pure fabrication, that where her testimony is not corroborated by other testimony or documentary evidence, it is not worthy of belief.
After testifying so emphatically that her husband was unemployed in 1960, she was shown a mortgage application which she and her husband signed in 1963 which listed her husband as a business manager for International *48 Teamsters Union - Local 875 at a salary of $11,700 a year and a verification of such employment and that it had existed since 1952, signed by petitioner's brother James Amodeo, who was president of Local 875 - International Teamsters Union. All she could say when she saw this mortgage application was: "This is all false statement that I put there." It is also significant that her brother James was not called to explain why he had signed a document stating his brother-in-law was a salaried union employee of the local of which he was president when, according to his sister, he was not employed any place that year. Without further analysis of the evidence, we hold petitioner did not sustain her burden of showing she was entitled to the disallowed dependency exemption. The next issue is whether the 1960 deposits in the three savings accounts, one in the East River Savings Bank and two in in The Bowery Savings Bank, constitute unreported taxable income to petitioner. In general, it can be said that unidentified deposits of money in a taxpayer's bank account can give rise to a reasonable inference that such deposits constitute receipt of income. Where respondent has made that inference *49 in his determination of deficiency and has determined the deposits constitute unreported income, the burden is on the taxpayer to overcome the presumption of correctness. William O'Dwyer, 28 T.C. 698. To meet his burden he may explain the nature of the deposits as being from some nontaxable source or that the deposits are represented in reported income. Hoefle v. Commissioner, 114 F. 2d 713, and Goe v. Commissioner 198 F. 2d 851, affirming Memoranda Opinions of this Court. Of course, the taxpayer may also defend against the assessment by proving he does not own the bank accounts involved. Here petitioner's defense is that the deposits in one savings account were from a nontaxable source and she did not own the other two savings accounts. Petitioner admits ownership of savings account No. X5068 in The Bowery Savings Bank and the account is stipulated showing she made seven deposits totaling $2,400 in this account. She testified these deposited funds in 1960 were intermittent deposits from funds in a metal box containing a cash hoard which she kept in the closet in in her home and the hoard was made up of accumulated savings from salary in prior *50 years and cash wedding gifts she received at a wedding reception party held in Mimi's Restaurant in Brooklyn a few days after she married Pasquale on March 11, 1960. She testified she received $6,000 at the reception and $800 afterwards. She produced a bag of about 150 signed greeting cards (some of them with first name signatures such as "Helen and Tom") and she said they were given to her with cash by the wedding reception guests. At one place in her testimony she said she marked down on each card the amount of cash each one gave her, ranging from $10 to $200. When it was called to her attention that the notations of amounts of money on the cards were in different color ink, she said: I took that all down at the wedding, and my husband was there. You see, we had to pay the man for the reception, so he took us downstairs into a room before we left, and he marked some, and I marked some, and we were all marking them. * * * At another place in her testimony she said the notations on the cards were made by her husband and the owner and that they were made simultaneously with the receipt of the card and money. She estimated her cash hoard from salary savings at the beginning of 1960 *51 to be $1,000 or (at another place in her testimony) $2,500, and that she put some of her wedding gift money in with this hoard and some in the savings account. After testifying her husband helped tabulate the wedding gift money, she replied to her counsel's inquiry as to why she did not deposit all of her wedding gifts in the bank account as follows: Well, it's because I didn't want my husband to know if I had a bulk sum of money, or what I had, so I hoarded it so he wouldn't know. Again her husband, who she said actually made money notations on the cards, was not called as a witness. The restaurant keeper, who she said kept $2,500 of the amount taken in at the reception, was not called. VO GUEST AT THE RECEPTION TESTIFIED. None of her relatives, who she said attended the reception and gave her money, were called to corroborate her story. We need make no further review of her testimony. There were more contradictions which we have not mentioned. It is enough to state she did not sustain her burden of establishing that the deposits in The Bowery Savings Bank account No. X5068 represent accumulated savings and cash wedding gifts. Petitioner disclaims ownership of the other two *52 savings accounts involved in the determination of deficiency. She said the East River Savings Bank account No. XX6071, which stood in her name alone according to the signature card, was actually owned by her half brother, Albert De Angelis, who in 1960 was a salaried organizer for International Teamsters Union - Local 238. Petitioner admitted she made all deposits and all withdrawals with respect to this account since it was opened by her in 1957. But she said she maintained the account for the convenience of her half brother, Albert, and the deposits were of his pay checks. She said the source of all the deposits in this account was her brother's weekly pay checks in the sum of around $94 a week take-home pay. She was asked to explain the February 9, 1960 deposit of $2,139 and she said that was not her brother's money and she said it was money given to her by a gentleman who came to her office and that she deposited it in this account and two days later she withdrew it. She characterized this as an "exchange" and not a deposit. She also said the two $500 deposits in this account were not deposits of her brother's money. Her brother, Albert, who was her only other witness, testified *53 briefly that he claimed ownership of the account, that all of his weekly pay checks in the amount of around $94 were deposited in that account, and that he supported his wife and three children in 1960 on money he had accumulated. He could not remember whether he or his wife owned a car in 1960 or whether they drove a union car. But he could remember he owned a summer home at Newport and he testified he maintained two bank accounts of his own; one in The Bowery Savings Bank and the other in City Savings Bank. We do not believe his testimony but in any event it really contradicts his sister, who said the main deposits in 1960 were not from his money. After the testimony of petitioner and her brother, the deposits in this bank account remain completely unexplained. It is a bank account standing in her name alone. It was completely under her dominion and control. She made the deposits in question. We sustain respondent's determination that petitioner's 1960 deposits in this bank account constitute unreported income. The remaining savings account involved in the determination of deficiency is savings account No. X7095 in The Bowery Savings Bank standing in the name of petitioner and *54 her mother. Here we have three deposits in 1960 totaling $3,500. The deposits are completely unexplained. Petitioner relies solely on her own self-serving statement that this account was owned by her mother. For reasons stated earlier, we cannot rely upon her unsupported statements. Moreover, she testified her mother had no income in 1960 other than $120 a month pension. She had no idea where her mother would get the money for the three deposits, each of a thousand or more dollars, in 1960. She said she had unrestricted rights of withdrawal and her mother was old and did not write checks and did not speak English well. However, her mother was in the courtroom and she was not called to testify. Again we can assume that if she were called to the stand, her testimony would not support petitioner. It is of no consequence that she was subpoenaed by respondent but not used by respondent as a witness. We hold petitioner failed to carry her burden and therefore the unexplained bank deposits in this account are taxable to petitioner. Our holding that petitioner did not sustain her burden of showing she did not own the East River Savings account No. XX6071 and The Bowery Savings account No. *55 X7095 means we uphold respondent's determination that the 1960 interest credited to those accounts in the sum of $102.68 and $198.35, respectively, constitute interest income to petitioner. The record amply sustains respondent's determination that petitioner was liable for the negligence penalty provided by section 6653(a). The return was improper and misleading and her excuse that it was prepared by a friend and that she did not know any better, is extremely weak. Using her maiden name, the wrong tax schedule, failing to report bank interest, and listing a claimed husband dependent as if he were a child, would, under the record here, be enough to sustain the negligence addition, at least. The remaining issue in the case was raised by respondent's amendment to answer filed after the close of trial. Respondent contends that the 1960 deposits in petitioner's checking account No. XXXX-X23 5 in the total amount of $5,137.05 constitute taxable income to her that year. We have made a close study of bank records of this checking account. It shows a tabulation of check charges and all deposits in and checks drawn on this account. There would usually be two or three deposits a month. *56 About half of them would be less than a hundred dollars. All the rest are deposits of less than $165 with the exception of one deposit of $2,500 on April 1, 1960 (and checked out on April 8) and one of $558.10. Many checks were drawn on the account and the monthly balance in the account was generally less than $200. Petitioner describes this account by saying: "It's a ten-cent account, where you pay ten cents a check, for convenience." She and her counsel were taken by surprise with respect to this account. It is the only checking account in the record and she had earlier said she had no bank accounts other than the three savings accounts involved in the deficiency determination. At one point in her testimony she said the sources of deposits in this account were accumulation of wedding gifts plus an accumulation of savings. Then she said the deposits in 1960 represent cash wedding gifts. The deposits in this account prior to her marriage appear to be about the same as after her marriage. The situation with respect to this account is quite different than that presented by the savings accounts. Here the burden was on respondent. Respondent frankly states on brief: "Had petitioner not *57 made any attempt to explain the deposits in her checking account, respondent might concede that he failed to meet whatever burden he may have assumed * * *". Respondent relies entirely upon her inconsistent statements and her explanation that the deposits in this account were from accumulated earnings and wedding gifts, while she had earlier said that such deposits, if made at all, were in The Bowery Savings Bank account. A study of the account rather indicates it was regularly used for such deposits as part of weekly or monthly pay checks. We note that in this case there is no subtraction of petitioner's reported income in respondent's determination that bank deposits in three savings bank accounts constitute unreported income. Under the record presented we think respondent was justified in that determination, but when deposits in this checking account are almost in the exact total amount of reported income, and respondent has the burden to show these deposits constitute unreported income, we are inclined to the view that he did not sustain his burden with respect to the checking account deposits constituting unreported income, and we so hold. Decision will be entered under Rule *58 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. See Wichita Terminal Elevator Co., 6 T.C. 1158, 1165, affd. 162 F. 2d 513↩.