William R. Padgett and Dolores V. Padgett v. Commissioner.
Padgett v. Commissioner
Docket No. 1086-68.
United States Tax Court
T.C. Memo 1971-96; 1971 Tax Ct. Memo LEXIS 237; 30 T.C.M. (CCH) 383; T.C.M. (RIA) 71096; May 3, 1971, Filed. William R. Padgett, pro se, 908 E. 1st St., Meridian, Idaho. Gary R. Defrang and John D. Picco, for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined deficiencies in income tax and additions thereto for failure *238 to file timely returns and for intentional disregard of rules and regulations as follows: Additions to Tax
Additions to Tax
Under§ 6651(a)
Under§ 6653(a)
Year
Deficiency
I.R.C. of 1954
I.R.C. of 1954
1961
$ 2,798.19
$ 699.55
$ 191.51
1962
6,680.44
334.02
1963
31,718.43
7,929.61
1,585.92
1964
8,374.55
2,093.64
425.10
The respondent determined the taxable income of petitioners by utilizing the bank deposits method and specific items of income. Concessions having been made by the parties, the issues remaining for decision are: (1) whether $7,500 received by petitioner William R. Padgett in 1961 represented compensation to him for legal services rendered or a gift; (2) whether $9,000 received by petitioner William R. Padgett in 1962 represented compensation to him for legal services rendered or moneys received for transmission to others; (3) whether $3,433.55 was received by petitioner Dolores V. Padgett in 1962 as proceeds from life insurance; (4) whether $20,777.49 was received by petitioner Dolores V. Padgett in 1963 by inheritance; (5) whether in 1964 the petitioner Dolores V. Padgett received rental income of $10,000; (6) *239 whether petitioners are liable for additions to tax for failure to file timely returns for the years 1961, 1963, and 1964 and for intentional disregard of rules and regulations for each of the years 1961 through 1964. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. 384 The petitioners are husband and wife and resided in Meridian, Idaho, at the time they filed their petition herein. They filed joint income tax returns for the taxable years 1961 through 1964 with the district director of internal revenue for the district of Idaho. Their return for the taxable year 1962 was filed timely. Their returns for the taxable years 1961, 1963, and 1964 were filed on the respective dates of February 10, 1966, February 16, 1966, and February 1, 1966. During the year 1961 the petitioner William R. Padgett, an attorney, was employed by the Idaho Department of Highways and was also engaged in the private practice of law. During the years 1962 through 1964 he was engaged in the private practice of law. Prior to the years in question, the petitioner William R. Padgett engaged in litigation on behalf of his wife's mother, Alberta G. *240 Morrow, in an attempt to recover certain timber sold by her. He and she entered into an "Attorney-Client Contract," dated July 25, 1956, which provided that his sole compensation would consist of 25% of the first $100,000 received from the sale of any timber recovered by litigation or compromise and 22% of all moneys in excess of $100,000 received from the sale of such timber recovered. Such contract further authorized the petitioner to employ Allan Shepard as associate counsel and provided that petitioner was to pay all fees earned by Shepard. In the ensuing litigation the petitioner was assisted by Shepard and by another attorney, Raymond Givens. The litigation was successful, at least in part, and a substantial recovery of timber was made on behalf of Alberta G. Morrow. As of January 1, 1960, Alberta G. Morrow was indebted to the petitioner in the amount of $78,620 for legal services rendered by him. During 1960 she and the petitioner entered into an agreement wherein she agreed to satisfy such indebtedness by remitting to him 25% of the payments received by her from the Prairie Lumber Company pursuant to a timber sales agreement between her and such company. During the years *241 1961 through 1963, the petitioner William R. Padgett received Prairie Lumber Company checks from Alberta Morrow or her estate in the amounts of $7,500 in 1961, $11,000 in 1962, and $3,000 in 1963. Alberta G. Morrow died on July 9, 1962. The petitioner Dolores V. Padgett and Grace Hollandsworth, daughters of Alberta G. Morrow, were appointed co-executrixes of her estate. Petitioner Dolores V. Padgett served as co-executrix of the estate from August 13, 1962 to January 21, 1964, and from June 18, 1964 to December 31, 1964. Petitioner William R. Padgett served as attorney for the estate from August 13, 1962 to January 21, 1964. [1]
A deposition of petitioner William R. Padgett was taken on March 6, 1963, in a proceeding in the District Court of the Third Judicial District of the State of Idaho by Allan G. Shepard against the Estate of Alberta *242 G. Morrow involving legal fees with respect to the timber recovery litigation. In such deposition, after having been duly sworn, the petitioner William R. Padgett testified to the effect that he was obligated to pay Shepard and that Alberta G. Morrow, pursuant to a separate agreement between her and Raymond Givens, was obligated to pay Givens; that Shepard had initially stated to petitioner that his fee would be $7,500 and that later he stated it would be $9,000; that there was no agreement between himself and Shepard entitling the latter to $16,500 as his fee; that Alberta G. Morrow received $50,000 upon the execution of a timber sales agreement with respect to the recovered timber in April 1960, of which amount he received $8,500, Shepard $6,500, and Givens $6,500; that he had received a total of $11,000 or possibly $13,000 as compensation for the services he had rendered; and that he had filed no claim against the estate of Alberta Morrow and expected no additional fee for his conduct of the litigation. In a statement before the Probate Court of Idaho County, dated October 25, 1963, the petitioner William R. Padgett, after having been sworn, testified to the effect that he had *243 received a Prairie Lumber Company check in the amount of $10,000 from Alberta G. Morrow in May 1960, which probably represented funds with which to 385 pay Shepard and Givens; that he paid Givens the amount of $6,500 out of his personal account; that he had received Prairie Lumber Company checks from Alberta G. Morrow or her estate for services rendered by him in the timber recovery litigation in the amounts of $7,500 in August 1961, $2,000 in April 1962, $1,500 in July 1962, $7,500 in August 1962, and $1,500 in August 1963; that Shepard's claim against the estate was in the amount of $10,000; that the estate had tendered a check to Shepard in the amount of $2,500 which had been returned uncashed; and that Shepard had obtained a judgment against the estate in the amount of $10,000. On October 25, 1963, the petitioner William R. Padgett filed a complaint in the District Court for the Tenth Judicial District of Idaho against Grace Hollandsworth in her individual capacity and in her capacity as co-executrix of the Estate of Alberta G. Morrow. Therein he stated that his fee with respect to the timber recovery litigation was in the amount of $78,620, of which $19,500 had been paid. *244 On October 21, 1962, the Estate of Alberta G. Morrow made a disbursement in the amount of $7,500 to Raymond Givens. On January 16, 1964, the estate made a disbursement in the amount of $10,389.63 to Allan Shepard. The petitioner Dolores V. Padgett and Grace Hollandsworth filed a petition in the Probate Court of Idaho County for a partial distribution from the Estate of Alberta G. Morrow and pursuant to a decree of such court dated October 10, 1963, the petitioner received an undivided one-half interest in approximately 700 head of cattle and two 1963 Ford trucks. By a lease filed with the Probate Court of Idaho County on October 11, 1963, the petitioner Dolores V. Padgett leased her interest in certain real property to Grace and Oren Hollandsworth for a term of 3 years. The lease provided that the lessees were to pay $10,000 rent per year, such payments to be made in advance with the first payment due on October 15, 1963, and subsequent payments to be made on or before October 15 of each succeeding year. [2]
By letter *245 dated October 13, 1964, the petitioner Dolores V. Padgett was informed that the $10,000 rental payment for 1964 was being tendered and deposited in the First Security Bank of Idaho. Such letter stated that the Internal Revenue Service was holding a lien against the leased property and the rentals therefrom for the satisfaction of the tax liability of the Estate of Alberta G. Morrow. The letter further stated that the rental payment would be delivered to petitioner upon the satisfaction of the estate's taxes. [3]
The returns as filed by petitioners for the taxable years 1961 through 1964 disclosed the following: 1961
1962
1963
1964
Gross Income
$8,400.00
$14,089.20
$5,919.00
$30,175.00
Less:
Itemized Deductions
1,462.00
2,139.60
1,476.00
Dependency Exemptions [4]
2,400.00
2,400.00
2,400.00
Business Expenses
2,719.23
4,945.00
5,169.00
Farm Expenses
9,723.00
20,334.00
Taxable Income (or Loss)
$4,538.00
$ 6,830.37
($8,749.00)
$ 796.00
*246 During the years 1961 through 1964 petitioners made total deposits to various bank accounts maintained by them as follows: 1961
1962
1963
1964
Wm. R. or Dolores v. Padgett, Checking Account, Idaho First National Bank
$20,019.83
$24,416.70
$66,127.37
$18,717.73
William R. Padgett, Trust Account, Idaho First National Bank
2,213.46
1,781.14
Wm. R. Padgett or Dolores V. Padgett, Savings Account, Glenns Ferry Bank, Ltd.
525.00
Running O Ranch, c/o Wm. R. Padgett, Checking Account, Glenns Ferry Bank, Ltd.
$28,439.50
Total
$20,019.83
$24,416.70
$68,340.83
$49,463.37 386 In making the deposits described above the petitioners withheld cash in the amounts of $450 in 1962, $600 in 1963, and $200 in 1964. There were also withheld by them payments from the Estate of Alberta G. Morrow for services rendered by them as co-executrix and attorney in the amounts of $915.58 in 1962, $200 in 1963, and $2,280 in 1964. Of the $11,000 in Prairie Lumber Company checks received by petitioner William R. Padgett in 1962 from Alberta G. Morrow or her estate, $9,000 was not included in above deposits. In the notice of deficiency the respondent *247 determined that the above deposits (less certain amounts thereof representing deposits of funds obtained from loans), as well as the cash and payments from the Estate of Alberta G. Morrow which were not deposited, constituted taxable income to petitioners. He further determined that petitioners realized additional taxable income to the extent of $9,000 in 1962 representing the receipt by William R. Padgett of Prairie Lumber Company checks which were not included in their bank deposits; $30,000 in 1963, representing a downpayment made by petitioners on the purchase of a farm inasmuch as the source of such payment was not identified; and $10,000 in 1964 representing the receipt by Dolores V. Padgett of rent which was not included in their bank deposits. He disallowed the itemized deductions claimed by petitioners for each of the years 1961, 1962, and 1964, and the farm losses claimed by them in 1963 and 1964 for lack of substantiation. [5] He allowed petitioners the standard deduction for each of the years 1961 through 1964. *248 The respondent further determined that petitioners were liable for additions to tax under sections 6653(a) and 6651(a) of the Internal Revenue Code of 1954 because all or part of the deficiencies determined for each of the years 1961 through 1964 was due to intentional disregard of rules and regulations by petitioners and because petitioners' returns for the years 1961, 1963 and 1964 were not filed within the time prescribed by law. Opinion The petitioners have not raised any issue with respect to the properiety of utilizing the bank deposits method in determining their taxable income for the taxable years 1961 through 1964. Petitioners' contentions are, apparently, (1) that the amount of $7,500 which was received by petitioner William R. Padgett in 1961 from Alberta G. Morrow did not represent compensation to him for legal services rendered, but a nontaxable gift from Alberta G. Morrow to him and members of his family, and that their income for such year as determined from their bank deposits should be reduced by such amount; (2) that the amount of $9,000 which was received by petitioner William R. Padgett in 1962 from Alberta G. Morrow or her estate and which was not included *249 in their bank deposits for such year did not represent compensation to him for legal services rendered as determined by the respondent, but the receipt of funds with which to pay legal fees to Shepard and Givens; (3) that an amount of $3,433.55 was received by petitioner Dolores V. Padgett in 1962 as nontaxable proceeds from life insurance covering the life of her mother and that their income for such year as determined from their bank deposits should be reduced by such amount; (4) that an amount of $20,777.49 was received by petitioner Dolores V. Padgett in 1963 as nontaxable inheritance from the Estate of Alberta G. Morrow, and that their income for such year as determined from their bank deposits should be reduced by such amount; (5) that an amount of $10,000 which was not included in their bank deposits for 1964 was not received by petitioner Dolores V. Padgett in such year as rental income as determined 387 by the respondent; (6) and that they are not liable for additions to tax for failure to file timely returns for the taxable years 1961, 1963, and 1964 or for intentional disregard of rules and regulations for each of the taxable years 1961 through 1964. [6]
*250 The burden of proof with respect to the items at issue is upon the petitioners. Hoefle v. Commissioner, (C.A. 6) 114 F. 2d 713, affirming a Memorandum aff'd per curiam (C.A. 9) 217 F. 2d 952; Thomas B. Jones, 29 T.C. 601. At the trial, the only testimony adduced in support of petitioners' contentions was that of petitioner William R. Padgett. His testimony was conclusory at best, amounting to little more than the articulation of petitioners' contentions as described hereinabove. No other witnesses were called who might reasonably have been expected to more fully describe the various transactions to which petitioner testified. At the close of the trial, briefs and reply briefs were requested of the parties. The petitioners, however, have not seen fit to favor us with briefs and we therefore proceed to a discussion of the issues involved laboring under such disadvantage. With respect to the first and second issues, namely, whether the amounts of $7,500 and $9,000 received by petitioner William R. Padgett from Alberta G. Morrow or her estate in 1961 and in 1962, respectively, constituted compensation to him for services rendered to her in *251 the timber recovery litigation, the petitioner testified that the former amount represented a gift to him and members of his family and that the latter amount represented the receipt of funds with which to pay legal fees to Shepard and Givens. However, the evidence shows that Alberta G. Morrow was indebted to him as of January 1, 1960, in the amount of $78,620 for legal services and that the payments in question, consisting of Prairie Lumber Company checks, were apparently made pursuant to their agreement as to the mode of payment of such indebtedness. Moreover, and of greater significance, his testimony herein is in direct conflict with his sworn testimony in prior local court proceedings as described in our Findings of Fact. Such testimony was to the effect that he received the disputed amounts of $7,500 in 1961 and $9,000 in 1962 as compensation. We also note with respect to the latter amount that the Estate of Alberta G. Morrow made sizeable disbursements to both Shepard and Givens. This, together with petitioner's prior testimony relating to the payment of fees to Shepard and Givens, indicates to us that these men looked to Alberta G. Morrow as their source of payment. We, therefore, *252 cannot accept petitioner's testimony herein that the disputed amounts constituted anything other than compensation to him. With respect to the third issue, namely, whether an amount of $3,433.55 included in petitioners' bank deposits in 1962 represented nontaxable life insurance proceeds, the only evidence with respect thereto was petitioner's testimony that his wife had received such an amount as her interest in some life insurance proceeds. In view of our discussion above as to the unreliability of petitioner's testimony, we are unwilling to accept his statement, without some corroboration, as a basis for concluding that nontaxable insurance proceeds were included by respondent in petitioners' taxable income for the taxable year 1962. With respect to the fourth issue, namely, whether an amount of $20,777.49, included in petitioners' bank deposits in 1963, represented a nontaxable inheritance, the record discloses that petitioner Dolores V. Padgett, by virtue of a partial distribution from the Estate of Alberta G. Morrow received, on or about October 10, 1963, an undivided onehalf interest in approximately 700 head of cattle and two 1963 Ford trucks. The testimony of the petitioner *253 was to the effect that the amount in question constituted proceeds received by petitioner Dolores V. Padgett from the sale to Oren and Grace Hollandsworth of her one-half interest in such assets. Under the circumstances, it is clear that such amount cannot be considered as constituting a nontaxable distribution from the estate within the contemplation of section 102 of the Internal Revenue Code of 1954. The sale of such assets would constitute 388 a taxable event and any gain realized thereby would be recognized for tax purposes. Sections 1001 and 1002 of the Code. To determine such gain it would be necessary to determine the petitioner's basis in such assets. See section 1014 of the Code and the Income Tax Regulations thereunder. Furthermore, to determine what portion of any gain would constitute taxable income it would be necessary to determine the nature of the assets in the hands of the petitioner and the length of time she had held them. The record is entirely devoid of proof which would permit us to make these determinations. Under the circumstances, there is no basis for concluding that any portion of the amount of $20,777.49 was erroneously included *254 in petitioners' taxable income for the taxable year 1963. With respect to the fifth issue, namely, whether petitioner Dolores V. Padgett received rental income in the amount of $10,000 in 1964, the record discloses that on or about October 11, 1963, she leased her interest in certain property to the Hollandsworths for a term of three years. Such lease provided for annual rental of $10,000, payable in advance on or before the date of October 15 for the years 1963 through 1965. There is also evidence of record to the effect that the $10,000 rental payment for 1964 was deposited in a bank account on or before October 13, 1964, such payment to be delivered to Dolores V. Padgett upon the satisfaction of the tax liability of the Estate of Alberta G. Morrow. The record further discloses that on November 3, 1964, the Estate of Alberta G. Morrow made a disbursement in the amount of $72,332.74 to the director of internal revenue. The petitioner William R. Padgett testified, in effect, that the lease between his wife and the Hollandsworths was not carried out and that the Hollandsworths ultimately purchased his wife's interest in the property which was the subject of such lease. He further *255 testified that the $10,000 rental payment was never tendered to his wife as alleged and that such payment was never received by his wife. The petitioner's testimony was not corroborated by any evidence of record and, in view of our prior discussion with respect to the reliability of his testimony, does not of itself afford us a sufficient basis for concluding that the respondent erred by including $10,000 of rental income in petitioners' taxable income for 1964. As indicated hereinabove, the respondent determined that petitioners were liable for additions to tax under section 6653(a) of the Code for each of the taxable years 1961 through 1964 and under section 6651(a) of the Code for the taxable years 1961, 1963, and 1964. [7] The burden of proof with respect to such additions is upon the petitioners. Estate of Ralph B. Campbell, 56 T.C. 1; C. Fink Fischer, 50 T.C. 164. *256 There was no evidence whatever adduced with respect to the additions to tax under section 6653(a). The only evidence adduced with respect to the additions under section 6651(a) was the testimony of petitioner William R. Padgett to the effect that he did not know why petitioners' return for 1961 was not filed timely and that their returns for 1963 and 1964 were not filed timely because of confusion caused by illness of his wife during such period. Such testimony is not sufficient to satisfy petitioners' burden of proof. We therefore approve the respondent's determination that petitioners are liable for additions to tax under section 6653(a) for each of the years in question and under section 6651(a) of the Code for the years 1961, 1963, and 1964. Decision will be entered under Rule 50. 389 Footnotes
1. The petitioners received payments from the Estate of Alberta G. Morrow for services rendered by them as co-executrix and attorney as follows: ↩
Payments
Payments
Received by
Received by
Dolores V.
William R.
Year
Padgett
Padgett
1962
$ 708.71
$4,590.18
1963
200.00
4,000.00
1964
7,325.00
9,280.00
2. On October 14, 1963, a deposit in the amount of $30,777.49 was made to the checking account maintained by petitioners at The Idaho First National Bank.↩
3. On November 3, 1964, the Estate of Alberta C. Morrow made a disbursement in the amount of $72,332.74 to the director of internal revenue.↩
4. Although petitioners claimed 4 dependency exemptions for 1963, they did not claim any deductions therefor and such exemptions were not utilized in calculating the loss reported for such year.↩
5. At trial the petitioners conceded that the respondent's disallowance of the itemized deductions claimed by them in 1961, 1962, and 1964 was proper. The respondent conceded that petitioners did not realize $30,000 of additional income in 1963 and that petitioners were entitled to the farm losses claimed by them for 1963 and 1964. He also conceded that petitioners' taxable income as determined by him for 1964 should be further reduced by the amount of $3,000 representing a loan obtained by them in such year.↩
6. At the trial the petitioner William R. Padgett waived an opening statement on behalf of the petitioners. The issues stated above were outlined by the respondent in his opening statement. After agreement was had from petitioner that such were the issues, the course of the hearing continued and testimony was adduced with respect thereto. In view of this, it is our opinion that the stipulation of facts entered into between the parties must be deemed to have been modified by them to the extent that it would otherwise have foreclosed a consideration of some of the issues described hereinabove.↩
7. Such sections of the Code provide in part as follows: SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes. - If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment. SEC. 6651. FAILURE TO FILE TAX RETURN. (a) Addition to the Tax. - In case of failure to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month, not exceeding 25 percent in the aggregate.↩