LUNG KUAN PAO and MARGARET LEE PAO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; TUNFAR, INCORPORATED, d/b/a THE GOLDEN BUDDHA RESTAURANT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lung Kuan Pao v. Commissioner
Docket Nos. 18515-81, 18516-81.
United States Tax Court
T.C. Memo 1984-224; 1984 Tax Ct. Memo LEXIS 447; 47 T.C.M. (CCH) 1711; T.C.M. (RIA) 84224; April 26, 1984. Dennis C. O'Brien, for the petitioners. Stephen R. Klorfein, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioners' Federal income tax and additions to tax as follows: Additions
Docket
Taxable Years
Deficiency
to Tax
Petitioners
Numbers
Ending
in tax
Sec. 6653(a) [1]
Lung Kuan Pao
18515-81
December 31, 1976
$74,996.00
$3,750.00
and Margaret
December 31, 1977
71,949.00
3,597.00
Lee Pao
December 31, 1978
62,719.00
3,136.00
Tunfar,
18516-81
March 31, 1977
40,664.51
2,033.33
Incorporated
March 31, 1978
63,066.67
3,153.33
After concessions by the parties, the issues *448 for decision are whether: (1) petitioners Lung Kuan Pao and Margaret Lee Pao understated their income in the amounts of $137,889.13, $135,004.22 and $117,504.28 during taxable years 1976, 1977 and 1978, respectively; (2) petitioners Lung Kuan Pao and Margaret Lee Pao are liable for additions to tax pursuant to section 6653(a) for such years; (3) petitioner Tunfar, Incorporated, understated its income in the amounts of $115,396 and $156,806.26, during fiscal years ending March 31, 1977, and March 31, 1978, respectively; and (4) petitioner Tunfar, Incorporated, is liable for the additions to tax pursuant to section 6653(a) for such years. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and accompanying exhibits are so found and incorporated herein by reference. Petitioners Lung Kuan Pao and Margaret Lee Pao (hereafter sometimes referred to as "Mr. and Mrs. Pao") are married and filed joint Federal income tax returns with the Internal Revenue Service in Atlanta, Georgia, for taxable years 1976, 1977 and 1978. These *449 petitioners resided in Decatur, Georgia, when they filed their petition. Petitioner Tunfar, Incorporated (hereafter sometimes referred to as the "corporation"), is a corporation whose principal place of business is located in Decatur, Georgia, a suburb of Atlanta. During the years in issue, the corporation operated a Chinese restaurant, the Golden Buddha. The corporation filed Federal corporate income tax returns for the taxable years ending March 31, 1977 and March 31, 1978, with the Internal Revenue Service in Atlanta, Georgia. Petitioners Margaret Lee Pao and Lung Kuan Pao immigrated to the United States in 1972 and moved to Georgia in 1975. They formed Tunfar, Incorporated, in 1975. During the corporation's fiscal years ending March 31, 1976 and March 31, 1977, the Paos owned 60 percent of its stock and increased their ownership to 80 percent during the fiscal year ending March 31, 1978. The corporation opened the Golden Buddha in May 1975. Its operation of the restaurant was its only source of income during the years in issue. At all relevant times, the restaurant had a seating capacity of approximately 100 people and served moderately priced meals for lunch and *450 dinner. The restaurant did not serve alcoholic beverages during any of the years in issue. When the restaurant initially opened, it served food seven days a week. At some point, it reduced its business to six days a week. The restaurant eventually became so successful that it was not uncommon to have to wait up to 45 minutes to be seated for dinner, which was its busiest period. Throughout the years in issue, Mr. and Mrs. Pao worked long hours at the restaurant. Mrs. Pao was the cashier and hostess while her husband was the chief chef. Neither individual was employed elsewhere during the years in issue. Varying numbers of other employees worked at the restaurant as cooks, waiters, cashiers and busboys at all relevant times. The restaurant's records were maintained pursuant to the following procedures. An original meal ticket and one copy were initially prepared for each order; the original ticket was sent to the kitchen while the copy was ultimately given to the customer for bill paying purposes. The lunch tickets were prenumbered while the dinner tickets were unnumbered. Although the restaurant was supposed to retain both sets of tickets, approximately 10 percent of the *451 numbered lunch tickets were missing. No accurate estimate of the completeness of the retained dinner tickets could be made because they were unnumbered. After the close of business, the Paos would take that day's receipts and both sets of meal tickets to their home. The receipts (including charges) were added together and the customer meal tickets were totaled. These sums were then entered on daily summary sheets which were subsequently given to the restaurant's accounting service with other business records. This accounting firm prepared the corporation's tax returns for the years in issue from corporate bank statements, canceled checks and the restaurant's daily summary sheets. The accounting firm did not review the actual meal tickets or the cash register tapes when preparing the corporation's tax returns. At all relevant times, the restaurant's total receipts were comprised of an unusually high percentage of credit card receipts. During the years in issue, the following amounts were deposited to bank accounts in the name of petitioners Lung Kuan Pao or Margaret Lee Pao: 1976
Type of Account
Amount
Savings
$ 29,333.66
Checking
40,980.24
Savings
25,743.55
Checking
56,367.19
Checking
34,844.33
Total
$187,268.97
1977
Savings
$ 11,351.60
Checking
611.58
Savings
29,251.07
Checking
18,886.07
Checking
48,147.03
Total
$108,247.35
1978
Savings
$ 23,523.12
Checking
63,820.94
Checking
14,736.00
Total
$102,080.06
*452 Most of the deposits to these accounts were small and irregular and in amounts less than $3,000 although several large deposits were made. The individual petitioners have no records specifically identifying the sources of these deposits. In response to pretrial interrogatories, the individual petitioners were unable to identify any of the sources of these deposits or the circumstances under which these funds were obtained. During 1976, the Paos transferred $30,880.91 between the above accounts. They also deposited most of their corporate salary checks, which totaled $17,198.84, to such accounts. Finally, the petitioners earned $1,100.06 of interest income on these accounts. During 1977, the Paos transferred $2,000 between their various bank accounts and made $2,606.13 of accommodation deposits to such accounts on behalf of a relative. They also received $2,411.61 of interest income from these accounts. The individual petitioners deposited most of their corporate salary checks, which collectively totaled $14,525.39, to these accounts. During 1978, the individual petitioners deposited $5,755 of rental income and reimbursement checks in the amounts of $1,885.57 and $2,460 *453 to these accounts. They also received $1,475.21 of interest income from their bank accounts. Finally, these petitioners deposited most of their corporate salary checks, which collectively totaled $22,700, to these accounts. On December 6, 1977, petitioner Margaret Lee Pao purchased a parcel of real property known as 1916 Clairmont Road in Dekalb County, Georgia, in her maiden name (Margaret Lee) for $48,500. On March 15, 1978, she also purchased another parcel of real property known as 1902 Clairmont Road for $53,900 in her maiden name. Both parcels were purchased with cash or checks. Normally, when a person enters the United States, he must complete a written customs declaration which specifically asks if he is carrying more than $5,000 in currency or anything readily convertible into currency. If he is carrying funds in excess of this amount, he must also complete an additional form known as a currency monetary instrument pertaining to such funds. Data from these currency disclosure forms has been routinely entered into a single computer system since 1972 and can be located by the individual's name. Failure to disclose the importation of funds in excess of these currency *454 disclosure limits is a violation of the United States' civil and criminal codes. A search of the computerized currency monetary instrument records from 1972 to immediately prior to trial revealed no declarations for any of the following individuals (including various name derivations of each person): petitioner Lung Kuan Pao; petitioner Margaret Lee Pao; Moon Tsang Lee; Hsien Mu Pao (a.k.a. Ronnie Pao); Chang Ming Yu; Ben Yeon Lee; Chung Lung Yang; Guey Chien Chibe; Wen Jye Chuie; and Shu S. Lee. For all of the years in issue, the individual petitioners reported all of their restaurant salaries on their Federal income tax returns. On their 1977 tax return, they reported $2,411.61 of interest income from two banks. On their 1978 tax return, they reported $1,475.21 of interest income from two banks and a net rental income of $6.27 from two rental properties including a home at 1902 Clairmont Road. The Commissioner, utilizing the bank deposits and expenditures method of analysis, determined that the individual petitioners omitted $137,889.13, $135,004.22 and $117,504.28 of income in taxable years 1976, 1977 and 1978, respectively. The Commissioner also determined that the *455 most likely source of the unreported income was the restaurant; hence, he characterized the individual petitioners' receipt of the unreported income as corporate dividends to shareholders. The Commissioner, therefore, adjusted petitoners' dividend income to reflect section 116's partial dividends exclusion when recomputing their taxable income. Further, in arriving at such determinations, the Commissioner made allowances for all documented taxable and nontaxable sources of funds. Given that the Commissioner determined that the individual petitioners' unreported income arose from undisclosed corporate dividends, he also determined that the corporation omitted $115,396 and $156,806.26 in income during fiscal years ending March 31, 1977 and March 31, 1978, respectively. [2]
OPINION The first issue for decision is whether petitioners Lung Kuan Pao and Margaret Lee Pao understated their income during taxable years 1976, 1977 and 1978 by $137,889.13, $135,004.22 and $117,504.28, respectively. The petitioners object to the Commissioner's *456 utilization of the bank deposits and expenditures method of recomputing their income for such taxable years and contend that they correctly reported their taxable income for these years on their Federal income tax returns. The individual petitioners assert that the bank deposits and expenditures in question were not unreported corporate dividends but were accommodation deposits and purchases for relatives, friends, business associates and even some total strangers in accordance with their Oriental heritage. Specifically, these petitioners contend that numerous relatives, friends, corporate employees, and even some total strangers, who all immigrated to the United States with large amounts of cash and checks, gave their funds to petitioners for safekeeping as the Paos were already established in the country. Respondent contends that the substantial bank deposits and real property purchases by petitioners during the years in issue, adjusted for documented nontaxable and reported taxable sources, constitute unreported dividend income from the corporation. In Harper v. Commissioner,54 T.C. 1121, 1129 (1970), which involved the Commissioner's reconstruction of *457 a taxpayer's fraudulent understatement of income by the bank deposits and expenditures method, we held that: Where a taxpayer has made numerous deposits in bank accounts, the sources or nature of which are not accounted for or recorded in books and records maintained by him, determinations made by the Commissioner of income subject to tax on the basis of such deposits have been approved in many instances; and it has been repeatedly held that a presumption of correctness attaches to such determinations and that the taxpayer has the burden of overcoming such presumption. See sec. 446(b), I.R.C. 1954; Marcello v. Commissioner,380 F.2d 494 (C.A. 5, 1967); Estate of Robert Lyons Hague,45 B.T.A. 104, 109, affd. 132 F.2d 775, 776 (C.A. 2, 1943), certiorari denied 318 U.S. 787; Thomas B. Jones,29 T.C. 601, 613-614 (1957); Hoefle v. Commissioner,114 F.2d 713, 714 (C.A. 6, 1940); Boyett v. Commissioner,204 F.2d 205, 208 (C.A. 5, 1953); Goe v. Commissioner,198 F.2d 851, 853 (C.A. 3, 1952); Doll v. Glenn,231 F.2d 186, 188 (C.A. 6, 1956); O'Dwyer v. Commissioner,266 F.2d 575, 588 *458 (C.A. 4, 1959), affirming 28 T.C. 698 (1957), certiorari denied 361 U.S. 862. Use of the bank-deposits method is proper even when the taxpayer keeps books and records which support his return as filed. Campbell v. Guetersloh,287 F.2d 878 (C.A. 5, 1961). Respondent is not bound to accept a taxpayer's return or his books at face value. Holland v. United States,348 U.S. 121 (1954). Our holding in Harper is clearly applicable to the instant proceeding. The individual petitioners made numerous and substantial bank deposits and real property purchases during the years in issue which were not completely and specifically reflected in their books and records. These petitioners have not contended nor shown the Commissioner's determinations to be "arbitrary and excessive"; hence, the traditional presumption of correctness attaches to the Commissioner's determinations and petitioners bear the burden of proving that such determinations were, in fact, erroneous. Helvering v. Taylor,293 U.S. 507, 515 (1935); Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practice *459 and Procedure. With respect to this issue, petitioners have failed to carry their burden of proof. Petitioners have failed to corroborate with credible evidence their claims of engaging in numerous and substantial accommodation deposits on behalf of family members, business associates and total strangers. Most of the bank deposits involved small sums of money which were made on an irregular although frequent basis. This pattern of deposits contradicts petitioners' claim that several individuals gave them large sums of money to make accommodation deposits on their behalf. Further, there is no record of any of these individuals declaring any funds to customs officials upon their entry into the United States during the mid and late 1970's, which is especially damaging given that some of these individuals testified that they did, in fact, declare sums in excess of $5,000 to customs officials.Finally, petitioners' explanation of these substantial bank deposits was, at best, contradictory and incomplete. We view the individual petitioners' detailed testimony of the pattern and source of the alleged accommodation deposits with suspicion given that they were unable to recall such facts *460 in pretrial interrogatories. Further, a large percentage of the bank deposits were made in 1976. Petitioners, however, did not present any evidence other than their own self-serving testimony of any specific individual who allegedly brought funds into the country and gave them to Mr. and Mrs. Pao during that year. Vague and general allegations of making accommodation deposits during the years in issue, without any supporting records or credible corroborating evidence, are insufficient to carry one's burden of proof. Petitioners' claims of making accommodation purchases of real property in petitioner Margaret Lee Pao's maiden name on behalf of a mysterious individual known as Shu Lee are also unconvincing. Mr. Lee's failure to appear at trial to corroborate petitioners' contentions warrants the inference that his testimony would not have been supportive of their position. Wichita Term. El. Co. v. Commissioner,162 F.2d 513, 515 (10th Cir. 1947). Further, petitioners actually reported rental income and claimed depreciation deductions on their 1978 Federal income tax return with respect to one of the parcels of real property that they allegedly merely held nominal *461 title to. This is inconsistent with the traditional role of nominee title holders and we cannot accept petitioner Margaret Lee Pao's unsubstantiated claim that her tax attorney advised her to do so. Accordingly, the Commissioner's determinations with respect to the individual petitioners are sustained. The next issue presented is the Commissioner's determinations that the individual petitioners' underpayments of tax were due to negligence or intentional disregard of the rules and regulations. Sec. 6653(a). These determinations are presumptively correct, Welch v. Helvering,supra, and petitioners bear the burden of proving such determinations to be incorrect. Gallagher v. Commissioner,75 T.C. 313, 318 (1980); Vaira v. Commissioner,52 T.C. 986, 1004 (1969), affd. on this issue 444 F.2d 770, 777 (3d Cir. 1971); Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioners did not offer any evidence directly pertaining to this issue; they unsuccessfully attempted to prove that the bank deposits and expenditures in issue constituted nontaxable accommodation deposits and purchases on behalf of third parties. *462 Accordingly, we hold that the individual petitioners have also failed to carry their burden of proof with respect to these additions to tax and uphold the Commissioner's determinations. The next issue is whether petitioner Tunfar, Incorporated, d/b/a the Golden Buddha, understated its taxable income in the amounts of $115,396 and $156,806.26 for fiscal years ending March 31, 1977 and March 31, 1978. The Commissioner's determinations are presumptively correct, and petitioners have the burden of proving them to be erroneous. Welch v. Helvering,supra;Rule 142(a), Tax Court Rules of Practice and Procedure.
The restaurant was extremely successful. It was not uncommon to have to wait up to 45 minutes to get seated at dinner. During the years in issue, an analysis of the restaurant's resported receipts demonstrated an unusually high percentage of charge purchases which would indicate the likelihood of unreported cash receipts. Further, the restaurant utilized prenumbered meal tickets only during lunch; the dinner meal tickets were unnumbered which prevented any determination of whether the retained dinner meal tickets represented substantially all of the dinner *463 orders. Dinner was the restaurant's busiest period. No explanation was offered as to why the dinner meal tickets were unnumbered while the lunch tickets were numbered. The major stockholders of the corporation worked long hours at the restaurant for relatively small amounts of reported income. They were also in positions which would assist them in diverting unreported dividends to themselves as petitioner Margaret Lee Pao worked as the cashier and the day's receipts were totaled in the privacy of the individual petitioners' home after work. At approximately the same time that the corporation is alleged to have underreported its income, its primary shareholders made close to $400,000 of bank deposits or purchases with funds that cannot be traced to nontaxable or reported taxable sources or otherwise satisfactorily explained.Finally, the accounting service which prepared the corporation's records and tax returns relied solely on materials furnished to them by petitioners Margaret Lee Pao and Lung Kuan Pao and did not independently verify the accuracy of any of the submitted data. Against this background, the corporate petitioner contends that its Federal income tax returns correctly *464 reported its income for the years in issue. In support thereof, it presented an accountant who independently analyzed its books and records and concluded that the corporation's tax returns in issue were correct. Although some of his statistical comparisons concerning wages, cost of goods sold and gross receipts disclosed no significant fluctuations (which factor he, in turn, claimed would indicate a complete reporting of income), these results could also demonstrate a consistent pattern of omitting income. Further, many of his statistical comparisons were flawed by his failure to review canceled checks for items purchased and to integrate cash purchases into his calculations. His analyses were also incomplete due to his failure to review the original cash register tapes. Finally, many of his calculations assumed that the unnumbered dinner meal tickets he reviewed constituted a complete accounting of the total dinner receipts, yet this has not been satisfactorily proven. Petitioner's remaining disinterested witnesses could only offer their general observations that the corporation appeared to be reporting all of its income and we found them unconvincing. Accordingly, petitioner *465 Tunfar, Incorporated, failed to carry its burden of proof and the Commissioner's determinations of the amounts of unreported income are upheld. The final issue is the Commissioner's determination that the petitioner Tunfar, Incorporated's underpayment of tax was due to negligence or intentional disregard of the rules and regulations. Sec. 6653(a). The Commissioner's determinations are presumptively correct, Welch v. Helvering,290 U.S. 111, 115 (1933), and petitioner has the burden of proving them to be erroneous. Rule 142(a), Tax Court Rules of Practice and Procedure.The petitioner did not offer any evidence directly pertaining to this issue; it merely unsuccessfully attempted to prove that it reported all of its income. Accordingly, we hold that this petitioner failed to carry its burden of proof with respect to these additions to tax and uphold the Commissioner's determinations. Decisions will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years in issue.↩
2. The differences of unreported income between the individual and corporate petitioners are due to their utilization of different taxable years.↩