## GOE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10588.

United States Court of Appeals Third Circuit.

Argued June 17, 1952.

Decided July 30, 1952.

Rehearing Denied Sept. 10, 1952.

R. J. Cleary, Pittsburgh, Pa., for petitioner.

George F. Lynch, Washington, D. C. (Ellis N. Slack, Acting Asst. Atty. Gen., A. F. Prescott, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before MARIS, McLAUGHLIN and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This case is here on a taxpayer's petition to review a decision of the Tax Court which sustained a determination of the Commissioner of Internal Revenue that for the taxable years 1937 to 1945, inclusive, taxpayer fraudulently failed to report taxable income and misrepresented his domestic status for exemption purposes, thereby incurring liability for deficiencies and fifty percent fraud penalties aggregating about $43,000. The issue of fraud is important not only because of the penalties but also because the government relies upon the existence of fraud to prevent taxpayer from invoking the statute of limitations. See Section 276 (a) Int. Rev.Code, 26 U.S.C. § 276 (1946 ed.)

Throughout the taxable years taxpayer was a salaried employee of National Tube Co., performing the duties of a purchasing agent. His annual salary averaged about $11,000 or a total of $98,000 for the nine year period. It is established in the record and not contested that during this period taxpayer placed in his checking account in the Union Trust Co. of Pittsburgh 65 deposits of currency aggregating more than $80,000 not derived from current salary. The Commissioner concluded that these deposits of currency represented additional taxable income and that the failure to report that income was fraudulent, although he did

852

not determine from what source the money came. The taxpayer insists that what he banked on each occasion was currency owned by him before the beginning of the taxable year in which the deposit was made. He does not state explicitly the source of the money but asserts that for many years he had saved and retained in the form of cash a substantial part of his salary, thus implying that the deposits in question were made from such accumulations.

 The taxpayer argues that the determination that the $80,000 of currency deposits represented taxable income of the several years of deposit cannot stand because he testified under oath, with some explanatory elaboration, that these deposits were not derived from current income, yet the Commissioner failed to rebut this testimony by relating the deposits to any particular income producing source. He reasons, first and correctly, that proof of bank deposits standing alone does not establish the receipt of income. But he goes astray in his next proposition that in order to establish an inference of income the evidence must link the bank deposit with an identified income producing activity. Of course proof of such a relationship is one way of proving that the deposit represents income. Gleckman v. United States, 8 Cir., 1935, 80 F.2d 394. But many other circumstances may create the same inference. "Deposits in checking accounts are so often made up of income that where * * * that is the fair inference to be drawn from the facts it [is] proper to give it effect." See Hague Estate v. C. I. R., 2 Cir., 1943, 132 F.2d 775, 777. This court and others have drawn that inference upon widely varying facts in numerous tax cases. Mauch v. C. I. R., 3 Cir., 1940, 113 F.2d 555. Halle v. C. I. R., 2 Cir., 1949, 175 F.2d 500. Hoefle v. C. I. R., 6 Cir., 1940, 114 F.2d 713. Oliver v. United States, 7 Cir., 1932, 54 F.2d 48; certiorari denied 285 U.S. 543, 52 S.Ct. 393, 76 L.Ed. 935. Calafato v. C. I. R., 1940, 42 B.T.A. 881, affirmed 3 Cir., 1941, 124 F.2d 187. The sum of the matter is that a reviewing court will disturb a determination that particular bank deposits represent and reflect current income only if in the circumstances of the case that conclusion seems speculative and arbitrary rather than rational and fair.

 Here we find in the record reasonable basis for the inference drawn by the Commissioner and the Tax Court and for their conclusion that the money banked by the taxpayer represented unreported income. At the outset the Commissioner determined that during the nine years in question taxpayer had deposited some $223,000 in two checking accounts, one in the Farmers Deposit National Bank of Pittsburgh, the other in the Union Trust Company of Pittsburgh. The Commissioner found that salary and all other ascertainable receipts of the taxable period, whether income or not, including sales of real property and securities, could have accounted for deposits aggregating about $140,000. This left unexplained deposits of somewhat more than $80,000. At the same time it appeared that 65 deposits of currency aggregating just about $80,000 had been made from time to time throughout the nine year period in the Union Trust account and that none of this currency represented current salary. Accordingly the Commissioner concluded, subject to taxpayer's privilege of showing to the contrary, that these large continuing unexplained currency deposits represented income being realized from undisclosed sources. A deficiency notice was issued designating this $80,000 as other income.

Thereafter, taxpayer undertook to show that these deposits did not represent income of the taxable years to which they were allocated. To this end he asserted under oath that each deposit was currency owned by him before the beginning of the taxable year. Yet he never stated directly where he obtained the money or what caused him to make this series of strangely delayed deposits over the nine year period. Rather, he left this to inference, testifying only that beginning about 1914 and thereafter he had saved very substantial sums out of salary and had retained these savings, together with other smaller acquisitions, in the form of cash. Taxpayer had preserved no records of this alleged course of substantial savings and cash retentions over the years and testified only in a general way from imprecise recollection. His posi-

tion was not wholly clear or consistent even as to the place of retention, whether a safe deposit box or an office safe or both. His stated reason for building up and retaining so large a cash reserve was fear of "going broke". He says he continued such saving out of current salary during the taxable years. He has left to speculation both the reason he transferred so much of these cash savings to his checking account in installments over a nine year period and the status of his cash reserve at the end of the period. Without more complete and plausible explanation, taxpayer's recital on its face is not very persuasive.

Beyond this, taxpayer borrowed more than $20,000 from a bank in 1929. Subsequent borrowings of about $12,000 appear. Interest was paid on these substantial obligations for several years. Yet, at all of these times taxpayer says he had large savings; indeed, he credits himself with having put aside in his cash reserve more than $60,000 by 1929. He offers no explanation for borrowing at interest in such circumstances.

The Commissioner and the Tax Court also found evidence of liberal spending by taxpayer not easily reconciled with his story of extreme frugality enabling large salary savings. His bank withdrawals show substantial "club expenses". It also appears that taxpayer from time to time presented friends with rather expensive gifts of jewelry and apparel. Summer hotel expenses of $1,200 for a two week period and $500 for another one week period are in evidence. At the same time taxpayer's financial burdens were increased by the circumstance that beginning in 1932 and thereafter he maintained his wife and daughter in a home separate from his own abode. Could he have been simultaneously as frugal as he says and as openhanded as he appears?

In these circumstances we think the finding and assessment of a deficiency was reasonable and must be sustained. Moreover, once it was concluded that the bank deposits represented current income there was no basis for viewing the failure to report that additional income as anything but willful, or the erroneous explanation offered by taxpayer as anything but deliberately false.

The taxpayer could not very well have been honestly mistaken as to the source of the $80,000. The case permits no middle ground between accepting his explanation as true and rejecting it as misrepresentation designed to conceal a fraud. Cf: Mauch v. C. I. R., supra; Halle v. C. I. R., supra; Hoefle v. C. I. R., supra.

Beyond this the Tax Court quite properly gave weight to taxpayer's conduct when first interrogated officially about this case. The Tax Court believed the testimony of a Treasury investigator that he asked taxpayer, who on request had presented bank statements of the Farmers Deposit Bank, whether that was "the only place he did his banking and he said yes to the question, that it was the only bank where he did his banking". Taxpayer denied he was asked about other places of banking and showed how previously in various connections, including the drawing of several checks in payment for taxes, he had voluntarily revealed the existence of the Union Trust account. But whatever taxpayer's conduct may have been before he became suspect, the Tax Court could properly conclude that when his tax returns came under investigation he attempted to divert the attention of the investigators from his Union Trust account which contained the large unexplained deposit items.

On the whole case, therefore, there was ample evidence to convince a reasonable man that taxpayer acted fraudulently with intent to avoid taxes. Accordingly, the Tax Court finding to that effect should not be disturbed. Cf. Helvering v. Kehoe, 1940, 309 U.S. 277, 60 S.Ct. 549, 84 L.Ed. 751.

The taxpayer also challenges the Commissioner's refusal to allow personal exemptions claimed by him during certain years as a married man living with his wife, and later as head of a family. To us it seems clear that he was not entitled to the claimed exemptions. It is unnecessary to restate the reasons for this conclusion which are adequately set out by the Tax Court. Whether in addition these claims were fraudulent, we need not consider. The establishment of fraud in connection with the failure to report income of each of the

854

taxable years suffices to support the penalties imposed and to prevent the statute of limitations from running.

The decision of the Tax Court will be affirmed.