MICHAEL S. MAHIGEL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent. [1]
Mahigel v. Commissioner
Docket Nos. 10774-78, 10775-78
United States Tax Court
T.C. Memo 1983-529; 1983 Tax Ct. Memo LEXIS 264; 46 T.C.M. (CCH) 1217; T.C.M. (RIA) 83529; August 25, 1983. Michael S. Mahigel, pro se. Robert J. Percy, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined the following deficiencies in, and additions to, petitioner's Federal income taxes: Addition to tax
Addition to tax
Year
Deficiency
under Sec. 6653(b)
under Sec. 6654(a)
1969
$3,877.21
$1,938.60
1970
9,338.42
4,669.21
1971
5,992.26
2,996.63
$191.75
1972
491.18
245.59
15.71
*265 The issues for decision are: (1) Whether petitioner received unreported income in the amounts determined by the Commissioner during each of the taxable years 1969 through 1972; (2) whether any part of the underpayment of tax for any of the taxable years 1969 through 1972 was due to fraud within the meaning of section 6653(b); [2] and (3) whether petitioner is liable for an addition to tax under section 6654(a) for failure to make estimated tax payments in 1971 and 1972. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioner resided in Fairfield, Connecticut at the time he filed his petitions in these cases. Petitioner filed joint income tax returns for the taxable years 1969 and 1970 and reported his income and deductions on the basis of cash receipts and disbursements. On his joint income tax returns for 1969 and 1970, petitioner reported his wife's wages of $5,164.49 and $3,003.38, respectively, *266 income from his asphalt business of $16,000 and $21,500, respectively, and interest income. [3] Petitioner had his accountant prepare these returns but failed to disclose his bookmaking operations to the preparer. During 1969 through 1972, petitioner was involved in an illegal bookmaking business but did not report any income or expenses from such business on his joint tax returns for 1969 and 1970. Petitioner did not file tax returns for 1971 and 1972. Since petitioner produced no records concerning his income and expenses from his gambling activities and was generally uncooperative during the audit process, respondent computed such amounts, using the bank deposits and cash expenditures method. Petitioner's gambling activities were generally transacted in cash which petitioner either spent or deposited in bank accounts at Lafayette Bank & Trust Co. Following are the total deposits made to accounts at Lafayette Bank & Trust Co. (either in petitioner's or his wife's name) in 1969 through 1972: Acct. No.
Acct. No.
Acct. No
Year
02-01097-6
500-0-6391-6
1-02074-9
Christmas Club
(pet'r)
(petr's wife)
(pet'r)
(pet'r)
1969
$30,335.80
1970
26,485.74
$18,698.93
$6,286.37
1971
33,668.23
10,759.73
$450
1972
5,312.45
415   350
*267 Virtually all of the deposits to these accounts were made in cash. From 1969 through 1972, petitioner made cash purchases and expenditures as follows: Year
Business
Capital Items
Personal (Pet'r and wife)
1969
$7,554.71
$2,853.80
$28,657.06
1970
7,981.97
12,316.45
37,260.96
1971
12,359.98
59,937.96
1972
29,552.32
Petitioner's deposits in the bank accounts at Lafayette Bank & Trust Co. and cash expenditures not traceable to such deposits or to other nontaxable sources greatly exceeded the income reported on his joint return for 1969 and 1970. This excess represented income derived from petitioner's gambling activities. As for 1971 and 1972, such bank deposits and cash expenditures were also computed to reconstruct petitioner's gambling activities, and those computations indicate that petitioner was required to file income tax returns for such years. During 1969, 1970, 1971, and 1972, petitioner and his wife received nontaxable amounts which were deposited in their various bank accounts totalling $5,784.40, $5,476.05, $10,732.15 and $452.04, respectively. During those years, petitioner and his wife also received nontaxable amounts *268 which were not deposited in their various bank accounts totalling $28,918.61, $47,534.34, $82,395.98 and $28,628.68, respectively. One of these nontaxable sources was loans totalling $23,860 from petitioner's father Samuel Mahigel and mother Jeannette Lewis as follows: Date
Amount
1970
$ 600
Samuel Mahigel--cash
9/30/70
11,600
Purchase money mortgage
8/20/71
3,000
Jeannette Lewis--cash
9/25/71
660
Samuel Mahigel--cash
2/7/72
3,000
Jeannette Lewis--cash
3/17/72
5,000
Samuel Mahigel--check
Total
$23,860
On May 15, 1970, petitioner's ex-wife paid the bank $3,000 in cash at the behest of petitioner and obtained two certified cashier's checks for $1,000 and $2,000. Petitioner was the source for $2,000 of these funds; John Keklik, a cousin of petitioner, was the source for $1,000. Petitioner and his wife received money from wedding presents in 1968. It is not known whether these moneys were spent or saved. During 1971, petitioner made the following loans to W. Schuster: Date
Amount
Payee
Account No.
8/21/71
$1,500
Cash
Lafayette Bank & Trust Co.
02-01097-6
10/4/71
440
Wally Schuster
Lafayette Bank & Trust Co.
02-01097-6
10/12/71
4,140
Wally Schuster
Lafayette Bank & Trust Co.
02-01097-6
*269 During 1971 and 1972, W. Schuster made the following loan repayments: Date
Amount
Miscellaneous
6/10/71
$300
Deposited Lafayette Bank & Trust Co.
02-01097-6
11/18/71
2,020
Deposited Lafayette Bank & Trust Co.
500-0-06361-6
1972
4,770
The loans and repayment had no effect upon respondent's calculation of petitioner's income. In his computations, respondent considered as nontaxable items $111,573.71 in loans received by petitioner during the years 1969 through 1973. [4]
*270 Petitioner had no cash hoard as of December 31, 1968, which could be reflected in the bank deposits and cash expenditures computation for 1969 through 1972. Under the bank deposits and cash expenditures method with applicable adjustments, respondent determined that petitioner underreported his (and his wife's) taxable income in 1969 and 1970 by $19,442.94 and $34,147.51, respectively, and was required to file Federal income tax returns in 1971 and 1972 based on his receipt of business income of $24,047.71 and $6,549.05. Petitioner's omission of all income and expenses from his illegal gambling business on his joint income tax returns for 1969 and 1970 was due to fraud. His failure to file required income tax returns for 1971 and 1972 was due to fraud. Petitioner failed to make estimated tax payments for the taxable years ending December 31, 1971 and December 31, 1972. OPINION Issue 1:Unreported Income
The first issue for decision is whether petitioner had unreported income from his gambling activities during the years in issue in the amounts determined by the respondent. A taxpayer is required to maintain adequate books and records to enable him to file *271 a correct return. Secs. 1.446-1(a)(4) and 1.6001-1(a), Income Tax Regs. If a taxpayer fails to maintain adequate records, the Commissioner is authorized to reconstruct the taxpayer's income in accordance with such method as in his opinion does clearly reflect income. Sec. 446(b). Because petitioner failed to report his income from his gambling activities during the years in issue and kept no records, the Commissioner reconstructed his income by using the bank deposits and cash expenditures method. Under such method, the Commissioner added all petitioner's bank deposits and known cash expenditures during the years in issue, and from that total, subtracted all items which were traceable to nontaxable sources, were duplicative, or were otherwise not currently taxable. The excess bank deposits and cash expenditures resulting from such adjustment represented petitioner's unreported income.
The use of bank deposits and cash expenditures has long been an acceptable method of computing income. Goe v. Commissioner,198 F.2d 851 (3d Cir. 1952), affg. a Memorandum Opinion of the Court; Halle v. Commissioner,175 F.2d 500 (2d Cir. 1949), affg. 7 T.C. 245 (1946); *272 Nicholas v. Commissioner,70 T.C. 1057 (1978); Estate of Mason v. Commissioner,64 T.C. 651 (1975), affd. 566 F.2d 2 (6th Cir. 1977); Harper v. Commissioner,54 T.C. 1121 (1970). Once respondent has determined that unexplained deposits and expenditures constitute income, the burden of proving his determination erroneous rests with petitioner. Rule 142(a), Tax Court Rules of Practice and Procedure; Harper v. Commissioner,supra;Estate of Mason v. Commissioner,supra.
Petitioner does not question the propriety of using this method to reconstruct his income, and clearly, under the circumstances, its use was reasonable. Reaves v. Commissioner,31 T.C. 690, 717-718 (1958), affd. 295 F.2d 336 (5th Cir. 1961); Romer v. Commissioner,28 T.C. 1228, 1243, 1245 (1957), and the cases cited therein. In addition, he admits receiving substantial amounts of money from his gambling activities which he failed to report. Instead, petitioner contends that respondent erroneously determined the gross receipts from his gambling activities in failing *273 to take into account additional nontaxable sources for the bank deposits. Specifically, petitioner explained the unaccounted for deposits as coming from amounts loaned to him by friends, parents, and other relatives. However, petitioner offered no documentation or other substantiation for any of the purported loans. None of these individuals were called as witnesses to testify as to the nature and purpose of the loans. The only proof offered by petitioner was his own testimony which was vague and indefinite. He did not identify any deposit which could be attributed to these loans nor offer any details as to their amounts or dates. When pressed, he simply threw out estimates. [5] We note that the respondent did give petitioner credit for various loans from his parents but petitioner could offer no details as to any additional loans.Petitioner also testified that he borrowed money from loan sharks during the years in issue but again, did not remember the date or the amount of any such loans. Thus, we will not disturb respondent's computations with respect to amounts petitioner received from loans. *274 Petitioner also argues that some of the deposits were comprised of accumulated savings from legitimate income received in prior years and cash wedding gifts. He testified that, prior to 1969, he had a safe deposit box with $10,000-$12,000 which represented money received from the sale of a pizza shop and $3,000-$4,000 in wedding gifts. No evidence was presented on this matter aside from petitioner's testimony which we again found indefinite and unconvincing. At one point in his testimony, petitioner even admitted that he did not know what happened to the wedding gifts. In fact, petitioner's claims of a cash hoard does not fit petitioner's admitted spending patterns. In addition, if petitioner indeed had any such cash accumulated on January 1, 1969, it is difficult to explain his borrowings of substantial sums of money in early 1969 and throughout that year. [6] Therefore, based on the entire record, we find that petitioner did not have a significant cash board and that the bank deposits and cash expenditures for the years 1969 through 1972 represented unreported income from his gambling activities. *275 Petitioner further disputes respondent's findings regarding a cashier's check of $2,000 dated May 15, 1970 payable to an attorney, George Ganin, for legal services. Such check was included in respondent's computation as a personal expenditure made by petitioner in 1970. Petitioner claims that the amount was not for legal services. Rather, he asserts that he received that amount from his cousin, John Keklik, and that this payment was put in escrow on behalf of petitioner's father to guarantee the payment of a $2,000 bond that petitioner's father had put up to bring Keklik to the United States. We find such testimony unsupported by the record. We do note that there is in evidence a cashier's check purchased on the same date payable for $1,000 to petitioner's father with the notation "in full payment of all monies lent to John Keklik per over." [7] This check may not be included in computing the deficiency, but this tells us nothing about the $2,000 check. Although Keklik was a cousin of petitioner, resided with him, and was employed by him, he did not see fit to have Keklik appear as a witness which creates the presumption that any such testimony would have been unfavorable. *276 Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). In sum, the only proof offered by petitioner was his own testimony, which was vague, indefinite and full of contradictions. We need make no further review of the testimony. Suffice it to say that petitioner reported no income from his admitted gambling activities, was uncooperative when respondent attempted to compute his income, and was not prepared to rebut any of respondent's computations. Respondent, through documentation of petitioner's bank deposits and cash expenditures, has provided substantial proof that petitioner had unreported income of at least the amounts determined in the statutory notices. Petitioner has simply failed to prove that respondent's computations were incorrect and we therefore sustain respondent's determinations as to petitioner's unreported income for the years in issue. Issue 2: Fraud
The next *277 issue for decision is whether any part of petitioner's underpayment of tax for each of the years involved was due to fraud with intent to evade tax under section 6653(b). Respondent bears the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure. To establish fraud, respondent must show that the taxpayer intended to evade taxes which he knew or believed he owed, by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968); Acker v. Commissioner,26 T.C. 107, 112-113 (1956). The issue of fraud involves a question of fact which requires an examination of the entire record. Mensik v. Commissioner,328 F.2d 147, 150 (7th Cir. 1964), affg. 37 T.C. 703 (1962); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). Since fraud can seldom be established by direct proof of intention, the taxpayer's entire course of conduct is often relied on to establish circumstantially the requisite fraudulent intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971); *278 Otsuki v. Commissioner,supra at 105-106. The evidence presented overwhelmingly establishes that petitioner fraudulently underpaid his taxes during each of the years in issue.As we noted previously, petitioner reported no income from his admitted gambling activities for the taxable years 1969 through 1972. Such a consistent failure to report substantial amounts of income over a period of several years, standing alone, is persuasive evidence of fraudulent intent. Holland v. United States,348 U.S. 121, 139 (1954); Estate of Beck v. Commissioner,56 T.C. 297, 364 (1971); Harper v. Commissioner,54 T.C. 1121, 1139 (1970). We recognize such principle should be cautiously applied in cases where respondent's determination of unreported income is based, in some respects, on petitioner's failure to prove error in respondent's determinations. See Estate of Beck v. Commissioner,supra.[8] We note, however, that in the instant case, we affirmatively found that the bank deposits and other cash expenditures were derived from petitioner's gambling activities. Thus, there is clear and convincing evidence *279 demonstrating petitioner's receipt of unreported income for the years in issue. But we need not rely solely on petitioner's failure to report such income since the record contains other persuasive evidence of fraud. Petitioner, in his testimony, admitted to receiving "two-three hundred dollars a week" as "salary" for running a bookmaking operation, yet did not report any of these amounts in income for 1969, 1970, 1971, and 1972. While petitioner filed returns for 1969 and 1970 and informed his tax preparer of income and expenses unrelated to his gambling activities, he did not disclose his bookmaking operation to the preparer because "he didn't want to tell him." This testimony makes it clear that petitioner had a specific purpose to evade taxes believed to be owing, i.e., fraudulent intent. See Foster v. Commissioner,391 F.2d 727, 732 (7th Cir. 1968), affg. on this issue a Memorandum Opinion of this Court; Estate of Beck,supra at 366; Sunbrock v. Commissioner,48 T.C. 55, 65 (1967). *280 The manner in which petitioner conducted his gambling transactions also supports a finding of fraud. All his gambling transactions were in cash, as were most of his bank deposits. He kept no records of income and expenses relating to his gambling operations. He misrepresented his income on his 1969 and 1970 joint Federal income tax returns to conceal the fact that he was engaged in gambling operations.In 1971 and 1972, he failed to even file returns since his only income was derived from bookmaking operations, thus continuing his efforts at concealing such income. Under such circumstances, courts have consistently held that failure to keep records of income and expenses and cash dealings are indicia of fraud. Spies v. United States,317 U.S. 492, 499-500 (1943); Mazzoni v. Commissioner,451 F.2d 197 (3d Cir. 1971); Grosshandler v. Commissioner,75 T.C. 1 (1980); Otsuki v. Commissioner,supra;Mikelberg v. Commissioner,23 T.C. 342, 353 (1954), affd. 234 F.2d 34 (3d Cir. 1956). See Jones v. Commissioner,29 T.C. 601, 613 (1957) (wilful evasion of tax may be inferred *281 when a taxpayer had made "numerous and comparatively large deposits in a bank account, the sources and nature of which are not recorded or accounted for in any books of account * * *.") See also Goe v. Commissioner,198 F.2d 851 (3d Cir. 1952), affg. a Memorandum Opinion of this Court. Based on all the facts and circumstances, we therefore find that part of the underpayment for each of the years at issue was due to fraud. Issue 3:Estimated Taxes
Petitioner failed to file and pay estimated taxes for 1971 and 1972. Accordingly, respondent assessed additions to petitioner's taxes for those years under section 6654(a). The section 6654(a) addition is imposed regardless of the presence of reasonable cause for the failure to pay. Section 1.6654-1(a), Income Tax Regs. Petitioner has not demonstrated that he is not liable for the estimated tax, and therefore respondent's determination must be sustained. See Bagur v. Commissioner,66 T.C. 817 (1976), remanded on other grounds 603 F.2d 491 (5th Cir. 1979). Decisions will be entered for the respondent.
Footnotes
1. The parties have entered into a stipulated agreement concerning the tax liabilities of petitioner's former wife Phyllis A. Mahigel DiLeo Winnikoff for the taxable years 1969 and 1970.↩
2. All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue, unless otherwise noted.↩
3. Petitioner's wife was not employed in 1971 and 1972.↩
4. Respondent made various additional adjustments in reconstructing petitioner's income and expenses for the years 1969 through 1972. Respondent allowed petitioner additional business expenses for depreciation of $136.26 and $1,345.50 and $1,039.94 for 1969, 1970, and 1971, respectively. In addition, under respondent's computations, petitioner was entitled to itemized deductions of $2,497.16, $3,794.65, $5,291.79 and $5,338.34 for 1969, 1970, 1971, and 1972, respectively. Respondent also determined that petitioner overreported his interest income by $153.63 on his 1969 joint Federal income tax return and had a $3,628.44 capital gain in 1971 from the sale of various business equipment.↩
5. For instance, petitioner testified that he borrowed money from his cousin, Mitchell Mahigel, but when asked how much, replied: "I might have borrowed about $1,000, $500, $2,000 * * *." The remainder of petitioner's testimony is similarly inconclusive.↩
6. We also point out that petitioner's frequent and extensive use of bank accounts strongly indicates that petitioner had no fear of leaving his money in an unsured interest-bearing bank account.↩
7. The endorsement on the back of the check read as follows: ↩
400.00
Plane ticket
300.00
Sent to John
200.00
Pd. to Atty. G. Garin
100.00
Interest
1,000.00
in full
Samuel Mahigel
8. See also Jedinak v. Commissioner,T.C. Memo. 1978-227, affd. without published opinion 605 F.2d 1196↩ (9th Cir. 1979).