T.C. Memo. 1997-466

UNITED STATES TAX COURT

GREGORY A. MASLOW AND MARINA MASLOW, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12960-94.                    Filed October 14, 1997.

Gregory A. Maslow, pro se.

<u>Alan R. Peregoy</u>, for respondent.

MEMORANDUM OPINION

JACOBS, <u>Judge</u>:  Respondent determined a deficiency of $18,800
in petitioners' Federal income tax for 1992, an accuracy-related
penalty of $3,760 pursuant to section 6662, and an addition to tax
of $4,801 for failure to timely file pursuant to section 6651(a)(1)
for that year.  The determined deficiency arises from respondent's

determination that petitioners underreported their income and overstated Schedule C deductions for 1992. The specific issues we must resolve are:

(1) Did petitioners underreport their income in 1992 by $25,112? Respondent determined this amount through the bank deposits method, showing total deposits of $82,072,[1] of which $45,332 was reported by petitioners on their tax return and $11,628 was conceded by respondent at trial as nontaxable. We find that the $25,112 difference came from nontaxable sources; thus, we hold that petitioners did not underreport their 1992 income by $25,112.

(2) Must petitioners include $7,220 in income, representing the market value of a trip to Scotland and England petitioner Gregory A. Maslow earned in 1992 as a sales award from Kentucky Central Life Insurance Co.? We hold they must.

(3) Are petitioners entitled to deduct various claimed Schedule C business expenses that respondent disallowed? We hold that petitioners are entitled to a portion, but not all, of the claimed Schedule C business expenses, as explained in greater detail infra.

(4) Are petitioners liable for the accuracy-related penalty under section 6662 for 1992 and for an addition to tax for failure

---

[1] The notice of deficiency states in one instance that the deposits for 1992 total $80,096 and in another instance $81,029. On brief, respondent states the total deposits as $82,072. On the basis of our holding that the unidentified deposits are not taxable, the differing deposit amounts are of no importance.

to timely file their 1992 income tax return under section 6651(a)(1)? We hold petitioners are liable for both the penalty and the addition to tax.

All section references are to the Internal Revenue Code for the year under consideration. All Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. For convenience, we present a background section and combine our findings of fact with our opinion under separate issue headings.

## Background

Petitioners, husband and wife, resided in Randallstown, Maryland, at the time they filed their petition. Gregory A. Maslow (petitioner) emigrated to the United States from Russia in 1974. He and Marina met (in 1986) and married (in 1988) in the United States.

During 1992, the year under consideration, petitioner was a general agent for several life and health insurance companies. In addition, during 1992 he started a business (known as East-West International) which was to engage in the export of goods to Russia.

Petitioners did not file Federal income tax returns for 1988 through 1992 until they were contacted by one of respondent's

revenue agents (Revenue Agent Bank) in the fall of 1993. As a result, on October 12, 1993, petitioners filed delinquent tax returns for 1988, 1989, 1990, and 1991. On November 5, 1993, they filed their 1992 tax return.

Petitioner did not maintain books or records pertaining to his insurance business. Petitioners did, however, maintain a checking account at Maryland National Bank under the name Graded Assets Management. This account was used for both business and personal purposes. Petitioner provided Revenue Agent Bank with bank statements and canceled checks that detailed most, if not all, of his 1992 business activities.

Issue 1. Did Petitioners Underreport Their 1992 Income by $25,112?

Due to the absence of adequate books and records, Revenue Agent Bank reconstructed petitioners' 1992 income using a bank deposits analysis. Through the use of this analysis, Revenue Agent Bank determined that petitioners underreported their 1992 income by $34,764. The $34,764 represents the difference between the aggregate amount of deposits to petitioners' Maryland National Bank checking account ($80,096)[2] and the income petitioners reported on their 1992 tax return ($45,332) (the difference being the unidentified deposits). At trial, respondent conceded that $11,628 of the original amount of unidentified deposits came from nontaxable sources. Hence, respondent now asserts there is only

---

[2]     See supra note 1.

$25,112^3$ ($82,072 - $45,332 - $11,628) of unidentified deposits.

The use of bank deposits to reconstruct income is well established. DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Parks v. Commissioner, 94 T.C. 654, 658 (1990); Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978); Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977). "The bank deposits method assumes that all money deposited in a taxpayer's bank account during a given period constitutes taxable income." DiLeo v. Commissioner, supra at 868. But the making of a bank deposit per se does not mean that the amount so deposited is income. Goe v. Commissioner, 198 F.2d 851, 852 (3d Cir. 1952); Vuitch v. Commissioner, T.C. Memo. 1985-95. However, where the Commissioner has determined that the deposits constitute income, the taxpayer has the burden of showing the Commissioner's determination was incorrect. See United States v. Massei, 355 U.S. 595 (1958); Parks v. Commissioner, supra at 661.

In explaining the source of the unidentified deposits, petitioner testified that he borrowed moneys in 1992 from various finance companies--Chrysler First Co., Commercial Credit Corp., and Rose Shanis Co. Petitioner also testified that in 1992 he periodically received money from his father-in-law (Roman Shumatsky) totaling approximately $10,000 as well as from Roland

---

[3] The differing amounts exist due to the inconsistency between the amount of total bank deposits stated in the notice of deficiency ($80,096 or $81,029) and respondent's brief ($82,072). See supra note 1.

Butler, a business associate, totaling approximately $19,000, and that he deposited these moneys into his bank account. (Mr. Butler and petitioner were to be involved in the export of coffee to Russia.) We found petitioner's testimony credible.

Mr. Shumatsky also testified and corroborated petitioner's testimony. (Petitioner testified that he was unable to reach Mr. Butler in order for the latter to testify.) We found the testimony of Mr. Shumatsky credible. No witnesses testified on behalf of respondent.

Our ultimate task is to distill truth from falsehood. As trier of facts, we "must be careful to avoid making the courtroom a haven for the skillful liar or a quagmire in which the honest litigant is swallowed up." Diaz v. Commissioner, 58 T.C. 560, 564 (1972).

On the basis of the testimony of petitioner and Mr. Shumatsky, we are persuaded that the unexplained deposits came from Messrs. Shumatsky and Butler. Hence, petitioners have shown respondent's determination as to the taxability of the deposits to be incorrect. Consequently, we hold that petitioners did not underreport their 1992 income by $25,112, as determined by respondent.

Issue 2. Must Petitioners Include $7,220 Representing the Market Value of a Trip to Scotland and England Earned by Petitioner as a Sales Award in Income?

Most of the insurance policies petitioner wrote were with Kentucky Central Life Insurance Co. In 1992, petitioner received a free trip to Scotland and England for himself and his wife as a

sales award from Kentucky Central Life Insurance Co. The fair market value of the trip was $7,220, which was reported to petitioner on a Form 1099. Petitioners did not include the value of this sales award in income. Petitioner claims that the trip was a "company conference" and that he was told by his superiors at the home offices of Kentucky Central Life Insurance Co. that the trip "was fully tax deductible".

Except as otherwise provided by law, gross income includes all income from whatever source derived. Sec. 61. Gross income includes income realized in any form, whether money, property, or services. Sec. 1.61-1(a), Income Tax Regs. Thus, if the taxpayer performs services in exchange for another type of service or receipt of property, then the taxpayer must include in his/her income the fair market value of the services or property received. Sec. 1.61-2(d)(1), Income Tax Regs. In the instant case, the sales award received by petitioner represents compensation for services. Hence, we hold that petitioner must include the $7,220 fair market value of the trip (not his estimate of what the trip was worth) in income for 1992.

Issue 3. Are Petitioners Entitled to Various Claimed Schedule C Business Expenses That Respondent Disallowed?

Respondent disallowed the following expenses petitioners claimed on Schedule C (Profit or Loss from Business) filed with their 1992 tax return:

| Type of Expense | Amount Claimed | Amount Disallowed |
|---|---|---|
| A. Home-office | $8,013 | $6,813 |
| B. Travel | 9,923 | 7,220 |
| C. Insurance | 1,983 | 1,983 |
| D. Phone | 5,709 | 5,709 |
| E. Commissions | 5,184 | 2,006 |

A. Home-Office Expenses

The portion of the claimed home-office expenses disallowed by respondent ($6,813) represents 6 months of home mortgage payments. (Petitioner claimed he used 50 percent of his residence for business purposes.) Both the home and the mortgage were in the name of petitioner's father-in-law, Mr. Shumatsky.

In general, section 280A denies a deduction with respect to a home office used by persons such as petitioner unless the home office is exclusively used on a regular basis either (1) as the principal place of business for any trade or business of such a person, (2) as a place of business which is used by patients, clients, or customers in meeting or dealing with the person in the normal course of the person's trade or business, or (3) in the case of a separate structure that is not attached to the home, in connection with the person's trade or business.

Petitioner failed to prove that the portion of his home claimed as an office expense was exclusively used on a regular basis either as the principal place of his insurance or export business or as a place of business used to meet customers or clients. See sec. 280A. Indeed, the record shows that petitioner did not meet his customers at his home but rather conducted his

insurance activities by traveling to the homes of his customers. The record further indicates that (1) petitioner occasionally, but not regularly, met other insurance agents at his residence, and (2) petitioner had an outside office for 3 months during 1992.

Because petitioner did not satisfy the requirements of section 280A, we sustain respondent's disallowance of petitioners' $6,813 claimed home-office expenses. See Commissioner v. Soliman, 506 U.S. 168 (1993).

### B. Travel Expenses

Respondent disallowed $7,220 of the claimed $9,923 travel expenses, determining that petitioners deducted, rather than included in income, the $7,220 travel award by Kentucky Central Life Insurance Co. referred to supra. Respondent allowed the balance of the claimed $9,923 travel expenses ($2,703) as automobile travel expenses incurred in connection with petitioner's insurance business.

Petitioner claims that $7,220 of the claimed travel expenses relates to trips to Israel (February 13-16, 1992), Russia (May 16-20, 1992), Brussels (September 15-24, 1992), and Luxembourg (November 17, 1992), in connection with the startup of his export business and has no connection with the travel award by Kentucky Central Life Insurance Co. Even if we accept petitioner's claim, nonetheless, petitioner failed to substantiate the costs of those trips. See sec. 274(d)(1). Moreover, petitioner did not file a Schedule C for his export business activities.

Deductions are a matter of legislative grace, and in general taxpayers bear the burden of proving that they are entitled to the deductions claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). Taxpayers must keep sufficient records to establish the amount of their deductions. See sec. 6001; Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965); sec. 1.6001-1(a), Income Tax Regs. Moreover, a taxpayer who claims a deduction bears the burden of substantiating the amount and purpose of the item claimed. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs.

Because petitioner failed to substantiate his purported travel costs, we sustain respondent's disallowance of the $7,220 in question. Moreover, insofar as the purported travel expenses represent startup business costs, they would not be deductible in 1992 because petitioner's export business did not begin operations until 1993. See sec. 195; Garrett v. Commissioner, T.C. Memo. 1997-231.

### C. Insurance Expenses

Respondent disallowed the claimed insurance expenses on the basis that petitioner failed to substantiate the business purpose of the deduction. Petitioner claims the insurance expenses related to his automobile insurance; respondent, on the other hand, asserts petitioner told Revenue Agent Bank that the insurance was for his

personal residence. In this regard, respondent's notice of deficiency states, in pertinent part:

> Taxpayer is an insurance agent and works for various insurance companies as a salesman. Taxpayer stated that he had an office in the home. The taxpayer was asked to provide substantiation for his expense as well as the insurance policy on his home and failed to do so. Taxpayer then stated that his expense is for his car but failed to bring any records to verify this statement.

In general, section 274(d) provides that no deduction shall be allowed as a trade or business expense for any traveling expenses or with respect to any listed property, as defined in section 280F(d)(4), unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement the business purpose of the expense. A passenger automobile is a "listed property" within the purview of section 280F(d)(4).

Petitioner failed to provide the requisite substantiation that would enable petitioners to deduct the purported insurance expenses on the automobile allegedly used in connection with petitioner's insurance business. Moreover, respondent did allow a deduction (under the heading "travel expenses", see supra) in the amount of $2,703 as automobile travel expenses incurred in connection with petitioner's insurance business. Accordingly, we sustain respondent's disallowance of the claimed $1,983 of insurance expenses.

### D. Phone Expenses

Respondent disallowed the claimed telephone expenses on the

basis that petitioner failed to provide substantiation for these expenses. A substantial portion of the claimed expenses was for foreign country calls that pertained to the startup of petitioner's export business. However, a portion of the telephone expenses was in connection with petitioner's insurance business.

Under certain circumstances, if claimed deductions are not adequately substantiated, we may estimate them, provided we are convinced that the taxpayer has incurred such expenses and we have a basis upon which to make an estimate. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). Based on the record presented, using our best estimate, and giving consideration to section 262(b),[4] we find, and thus hold, that petitioners are entitled to a deduction for telephone expenses in the amount of $1,500 for 1992. See, e.g., Velinsky v. Commissioner, T.C. Memo. 1996-180.

E. Commissions Expenses

---

[4] SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES.

(a) General Rule.--Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.

(b) Treatment of Certain Phone Expenses.--For purposes of subsection (a), in the case of an individual, any charge (including taxes thereon) for basic local telephone service with respect to the 1st telephone line provided to any residence of the taxpayer shall be treated as a personal expense.

Petitioners claimed $5,184 as commissions expenses. A portion of this amount represented offices expenses ($1,053), and the balance represented commissions paid to other insurance agents ($4,131). In the notice of deficiency, respondent allowed all but $2,006 of the claimed $5,184.

Petitioner testified that the disallowed $2,006 represented payments to Edward Levenson, who obtained an insurance policy that petitioner wrote and for which he received a commission. Respondent, on brief, concedes that petitioner is entitled to a deduction in the amount of $1,053 for office expenses and $2,006 for the payments to Mr. Levenson. Respondent now asserts that $2,125 should be disallowed as commissions expenses ($5,184 - ($1,053 + $2,006)), claiming petitioner testified that he paid no other commissions in 1992. Respondent misunderstands petitioner's testimony; petitioner did not concede any part of the claimed commissions expenses.

On the basis of respondent's concession that the $2,006 paid to Mr. Levenson is deductible, and because that amount was the only amount challenged in the notice of deficiency with regard to the claimed $5,184 of commissions expenses, we hold that petitioners are entitled to a Schedule C deduction for commissions expenses in the amount of $5,184, as claimed.

Issue 4.  Delinquency Addition to Tax and Accuracy-Related Penalty

Respondent determined the section 6651(a)(1) addition to tax for failure to timely file a 1992 income tax return and the section 6662 accuracy-related penalty for negligence.

Section 6651(a)(1) provides for an addition to tax for failure to file a timely return.  A taxpayer may avoid the addition to tax by establishing that the failure to file a timely return was due to reasonable cause and not willful neglect. Rule 142(a); United States v. Boyle, 469 U.S. 241, 245-246 (1985).

Petitioners failed to timely file their 1992 tax return.  They did not present any evidence establishing that their delinquent filing was due to reasonable cause.  Indeed, the evidence reveals that they knew that they were required to file income tax returns but did not do so until contacted by respondent's revenue agent.

Section 6662 imposes a penalty equal to 20 percent of the portion of the underpayment that is attributable to negligence.  In order to avoid this penalty, petitioners must prove that they were not negligent.  Negligence is defined as the failure to exercise the due care that a reasonable, prudent person would exercise under similar circumstances.  Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Neely v. Commissioner, 85 T.C. 934, 947 (1985).

Petitioners failed to exercise the due care that a reasonable prudent person would have exercised by (1) failing to maintain adequate books and records, (2) failing to report the $7,220 sales

award as income, and (3) overstating Schedule C deductions. Accordingly, we sustain respondent's determination that petitioners are liable for both the section 6651(a)(1) addition to tax and the section 6662 penalty for 1992.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.